STATE OF INDIANA ON THE RELATION OF RALPH W. VAN NATTA, COMMISSIONER OF MOTOR VEHICLES *v.* JACK E. RISING.

[No. 973S171. Filed May 16, 1974.]

*Theodore L. Sendak,* Attorney General, *Larry C. Gossett,* Deputy Attorney General, for appellant.

*William L. McClellan,* of Greencastle, for appellee.

ARTERBURN, C.J.—This appeal is from a proceeding brought under the Habitual Traffic Offenders Statute, IC 1971, 9-4-13-1 *et seq.* [Burns Ind. Ann. Stat. § 47-2334 *et seq.*]. On March 2, 1973, the prosecuting attorney in Putnam County, pursuant to the aforesaid Act, filed an affidavit in the Circuit Court for a proceeding against the appellee to have his motor vehicle operator's license revoked by automatic operation of the statute because of three (3) convictions of driving while under the influence of intoxicating liquor. Two (2) of the convictions were prior to the enactment of the statute under which the proceeding was instituted. (January, 1965, and January, 1969). The last conviction occurred on November 11, 1972, which was subsequent to the enactment of the statute. The statute specifically provides that it shall be operative when there have been three (3) such convictions, only one of which need be subsequent to the date of the enactment of the statute.

The contention is made that this statutory proceeding for the revocation of the operator's license is ex post facto in its application because it involves two (2) offenses which occurred before the statute became effective. The trial court took this view and declared the statute unconstitutional. The State appeals from that judgment.

The error of those who think that such a law as the one before us is ex post facto is evident from an examination of Chief Justice Marshall's formulation of an ex post facto law as "one which renders an act punish-

able in a manner in which it was not punishable when it was committed." *Fletcher* v. *Peck* (1810), 6 Cranch 87 at 138, 3 L.Ed. 162 at 178, 10 U.S. 85 at 138. Defendant in this case before us is *not* being punished for an act of driving while intoxicated which occurred prior to the enactment of the statute under which he is being punished. As a matter of fact, strictly speaking defendant is not being punished for driving while intoxicated. What the legislature has done is to create a new crime. The new crime or act for which defendant is being punished is the *act of driving while intoxicated by one twice convicted of driving while intoxicated.* It is the conviction for this new crime which triggers the imposition of the penalty simultaneously created for this new crime. This new crime with which we are here concerned is one of degree. Crimes of degree are not unknown to our jurisprudence. For instance, while it is not a crime to drink in a public place, it is a crime to drink to the degree of intoxication in a public place. IC 1971, 7-1-1-32 (11) [Burns Ind. Ann. Stat. § 12-611 (1956 Repl.)]. Similarly, discretionary sentencing procedures may involve a consideration of degree. A judge sentencing a speeder who was doing 100 m.p.h. in a 30 m.p.h. zone may consider the fact that the driver was also violating the law as he did 40 m.p.h., 50 m.p.h., 60 m.p.h. and so on on his way to the 100 m.p.h. for which he is being punished. Furthermore, it has long been recognized that the purpose of ex post facto prohibitions is to insure that no person "shall be subjected by subsequent legislation to any penalty, liability, or consequence that was not attached to the transgression when it occurred." *Blackburn* v. *State* (1893), 50 Ohio 428 at 438, 36 N.E. 18 at 21. In other words, ex post facto provisions insure notice. Thus, habitual criminal and habitual traffic offender statutes are not ex post facto laws since they do give notice that if persons persist in certain behavior they will be punished more severely than previously.

It should be noted that even though the proceeding is

not a criminal one, but is one which becomes operative upon certain criminal convictions, the statute provides for a separate revocation hearing after three (3) convictions and complies with *Lawrence* v. *State* (1972), 259 Ind. 306, 286 N.E.2d 830, in which we held that there must be a two-stage trial where a person is charged with being an habitual criminal. Thus, although this is not a criminal proceeding, it nevertheless complies with the due process requirements of similar criminal proceedings. It is true that the statute before us does have retrospective characteristics in that it takes into consideration for classification purposes certain events which were in existence or occurred prior to the enactment of the statute. We find nothing invalid in this respect. The purpose of the law is to classify those who—in the interest of the public safety and health—should be prohibited from using the highways. The same rationale could be used where a statute prohibits a person with impaired eyesight from driving. A classification based upon conditions existing prior to the statute, although retrospective in application, is not constitutionally infirm when the classification is relevant to the objective of the statute, in this case, public safety and health. *Kirtley* v. *State* (1949), 227 Ind. 175, 84 N.E.2d 712; *State Board of Barber Examiners* v. *Cloud et al.* (1942), 220 Ind. 552, 44 N.E.2d 972, *Blue* v. *Beach et al.* (1900), 155 Ind. 121, 56 N.E. 89. The operation of this statute, which results in the deprivation of the license to drive, is not a punishment as a result of a criminal proceeding, but is rather an exercise of the police power for the protection of the public. The appellee is not receiving increased punishment for the previous convictions, but is automatically falling into a class of persons prohibited from driving on the public highways for the protection of the remaining public using the highways. We find nothing presented to us that shows the statute to be unconstitutional. The judgment of the trial court is reversed with directions to enter judgment in conformity with the statute.

Givan, Hunter and Prentice, JJ., concur; DeBruler, J., dissents with opinion.

## Dissenting Opinion

DeBruler, J.—Both our State (Art. 1, § 24) and Federal (Art. 1, § 10) Constitutions contain *ex post facto* clauses, and they have long been viewed by this Supreme Court as well as by the United States Supreme Court as a bar to certain forms of legislation.

> "The plain and obvious meaning of this prohibition is, that the legislature shall not pass any law, after a fact done by any citizen, which shall have relation to that fact, so as to punish that which was innocent when done; or to add to the punishment of that which was criminal; or to increase the malignity of a crime; or to retrench the rules of evidence, so as to make conviction more easy." *Strong* v. *State* (1822), 1 Blackf. 202, 205; *Calder* v. *Bull* (1798), 3 Dall. 386, 1 L. Ed. 648.

I believe that the trial court here was correct, and that the section of the Habitual Traffic Offenders Act which mandates the use of convictions that pre-existed the enactment of this statute in computing the number of offenses necessary for a license revocation operates against the appellee as an *ex post facto* law since it was enacted, "after a fact done by a citizen which shall have relation to that fact so as to . . . add to the punishment of that which was criminal. . . ." *Strong* v. *State, supra.*

The Habitual Traffic Offenders Act became effective on September 1, 1972, and, provides in part, for the revocation of an operators license for a term of ten years upon a driver's having accumulated three or more convictions for the offense of Driving While Intoxicated (IC 1971, 9-4-1-54, being Burns § 47-2001[b][2]) within the previous ten year period. It is also stipulated in the Act (IC 1971, 9-14-13-3a, being Burns § 47-2336a) that only one of the three necessary convictions had to have occurred after the effective day of the Act. The certified driving record of this appellee intro-

duced at the revocation hearing below showed that .in the years 1965, 1969 and 1972 he had been convicted of the offense of Driving While Intoxicated, and on each occasion had his license suspended for one year, ninety days and sixty days respectively.

Driving while intoxicated is a criminal misdemeanor punishable by imprisonment, fine or a license suspension. After each of his convictions on this offense appellee had the penalties then provided by the statute assessed and imposed upon him. Now, however, because of this new legislation and as a result of his previous convictions he will have the identical penalty reimposed. Thus the Habitual Traffic Offenders Act is a law which was not in existence at the time of two of these convictions but now provides further penalties based on these prior convictions. A law such as this which by its necessary operation has retrospective application to crimes committed before its enactment and by its relation to these offenses increases the penalty upon a citizen is within the definition of an *ex post facto* law.

The majority holds, however, that while they may concede the *ex post facto* nature of this legislation the prohibitions of the clause are limited only to the imposition of criminal penalties and since the revocation here is not in the nature of a criminal punishment that clause does not conflict with this statute. While I can agree that the revocation of an operators' license under the Habitual Traffic Offenders Act is not a criminal proceeding I cannot agree that this deprivation, which of course is identical to the penalties already imposed on the appellee by his previous criminal convictions, is so unsubstantial as not to constitute a punishment for the individual involved. Nor do I believe that the history or nature of the *ex post facto* clause requires us to interpret it in so narrow a fashion. For example, in its opinion in *U.S.* v. *Lovett* (1946), 328 U.S. 303, 66 S. Ct. 1073, 90 L. Ed. 1252, the United States Supreme Court found that the loss of a government salary, although not a criminal penalty, was a punishment

within the terms of the *ex post facto* and bill of attainder clauses. Likewise in *Cummings* v. *Missouri* (1866), 71 U.S. 277, 18 L. Ed. 356, the Court found that the loss of the ability to participate in a chosen profession, again a penalty in no way deemed criminal, was sufficiently substantial as to be a punishment within the *ex post facto* clause. Where substantial punitive consequences result to the individual, even though they are not strictly criminal in nature, these consequences or penalties are within the meaning of the *ex post facto* clause.

It must be recognized that the ten year revocation of a motor vehicle operators license in an automobile oriented society involves a serious deprivation to the individual. Not only does it naturally hinder a person's ability to travel and move about but it also may have serious effects on the type of employment he may accept and even the area in which he may live. These consequences may involve significant personal hardships on the individual and are serious enough to constitute penalties which a citizen has a right not to have applied to him in an *ex post facto* manner.

I must emphasize that my view of this case recognizes the interest of the State in regulating the revocation of motor vehicle operators licenses, and I believe the use of a citizen's driving record is clearly a legitimate method of making that decision. However the individual has an even greater interest, and one which is constitutionally protected by the *ex post facto* clause, in knowing that convictions and penalties which have been assessed and finalized before the enactment of new legislation will remain dormant. The *ex post facto* clause operates to stay the hand of the Legislature when it seeks to unearth a citizen's previously disposed of convictions and use them anew to work a significant deprivation on that citizen.

NOTE.—Reported at 310 N.E.2d 873.