DENNIS L. OWENS *v.* STATE EX REL. RALPH W. VANNATTA

[No. 1-178A10. Filed November 28, 1978. Rehearing denied January 5, 1979. Transfer denied April 12, 1979.]

*David W. Dennis, Dennis, Reinke & Vertesch*, of Richmond, *John O. Worth, Clarkson and Worth*, of Rushville, for appellant.

*Theodore L. Sendak*, Attorney General of Indiana, *Wesley T. Wilson*, Deputy Attorney General, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J. — Respondent-appellant Dennis L. Owens appeals from the judgment of the trial court wherein he was adjudged to be a habitual traffic offender pursuant to IC 1971, 9-4-13-1 *et seq*. (Burns Code Ed.),[1] and wherein his license to drive was suspended for a ten year period.

## FACTS

On October 22, 1969 Owens was convicted of reckless driving. Thereafter, on March 4, 1972 and again on January 16, 1976 Owens was convicted for driving while under the influence of alcohol. The State, *ex rel*. Ralph W. VanNatta, filed a verified petition in the Rush Circuit

---

1. If a person is found to have committed a certain number of specified traffic violations, the person is declared to be a habitual traffic offender and his license to drive in Indiana is revoked for a period of ten years.

Court to have Owens adjudged a habitual traffic offender and to have him show cause why he should not be adjudged a habitual traffic offender and have his driving privileges revoked for ten years.

Owens filed a motion to dismiss, contending that the Habitual Traffic Offender Act was unconstitutional, or, at least, that it was being applied in an unconstitutional manner. Owens also filed a motion for trial by jury. After overruling Owens' motion to dismiss the trial court held a hearing to give Owens the opportunity to show cause why he should not be adjudged a habitual traffic offender. After the hearing the court took the matter under advisement. Two weeks later the court issued an order wherein Owens was declared to be a habitual traffic offender, and wherein Owens' driving privileges were suspended for ten years.

Owens filed a motion to correct errors which was subsequently overruled by the court. Owens now brings this appeal from the overruling of that motion to correct errors.

## *ISSUES*

The issues which have been presented to this court for review are as follows:

1. Whether the Habitual Traffic Offender Act unconstitutionally imposes double jeopardy.

2. Whether the Habitual Traffic Offender Act is an unconstitutional ex post facto law.

3. Whether the Habitual Traffic Offender Act is an unconstitutional bill of attainder.

4. Whether the Habitual Traffic Offender Act is unconstitutional because it denies a respondent the right of trial by jury.

5. Whether the Habitual Traffic Offender Act as enforced denies the equal protection of the law.

6. Whether the Habitual Traffic Offender Act unconstitutionally provides for cruel and unusual punishment.

7. Whether the Habitual Traffic Offender Act unconstitutionally denies due process of law because it allows the trial court no discretion in imposing the alleged penalty.

8. Whether the trial court deprived Owens of his constitutional right against self-incrimination by requiring him to testify against himself.

*Issues One, Two, and Three*

Owens contends that the Habitual Traffic Offender Act is unconstitutional in that it is an *ex post facto* law, a bill of attainder, and imposes double jeopardy. These contentions have been examined and rejected by both this court and our Supreme Court. See *Hamilton v. State ex rel. VanNatta* (1975), 163 Ind.App. 342, 323 N.E.2d 659 and *State ex rel. VanNatta v. Rising* (1974), 262 Ind. 33, 310 N.E.2d 873. We, therefore, hold that Owens' first three contentions are without merit.

*Issue Four*

Owens contends that the Habitual Traffic Offender Act is unconstitutional in that it denies a respondent the right to trial by jury. Owens points out that both the United States and Indiana constitutions guarantee trial by jury for both civil and criminal cases. See U.S. CONST., amend. VI and IND. CONST., art. 1, §§ 19 and 20. A proceeding under the Habitual Traffic Offenders Act is specifically denominated a "civil proceeding against the person." See IC 1971, 9-4-13-5 (Burns Supp. 1977).

The revocation of a respondent's driver's license pursuant to the Habitual Traffice Offenders Act is neither a criminal proceeding which imposes fine or punishment, nor is it a civil proceeding where the party aggrieved by the respondent's actions (the public) can recover legal damages, but rather it is a civil proceeding which is quasi-administrative in nature. It is not the type of criminal or civil proceeding for which a jury trial was provided at common law. Therefore, trial by jury is not required. See *Hiatt v. Yergin* (1971), 152 Ind.App. 497, 284 N.E.2d 834.

In 60 C.J.S. 819-821, Motor Vehicles § 164.1, it states:

"A license to drive a motor vehicle not being a vested right . . . is subject to suspension or revocation as a statute or ordinance may provide, when the public interest and welfare reasonably require, the legislature having full authority to prescribe the conditions on which such a license will be suspended or revoked. The revocation of the grant to operate a motor vehicle upon the highways deprives the holder of no guaranteed civil right. Although there are some statements to the contrary, it is generally held that revocation or

suspension is not a penalty, and that its purpose is not the punishment of the driver, but the protection of the public from those who have demonstrated that their driving presents a hazard to life and property. It is an exercise of the police power, and has been held to be valid as a reasonable regulation of an individual right in the interest of the public good.

A license may not be suspended or revoked capriciously or arbitrarily, but only in the manner and on the grounds provided by law, and a statutory provision prescribing the conditions on which the privilege may be exercised and on breach of which it may be revoked or suspended has been held not unconstitutional. The power of the designated administrative agency or official to revoke or suspend a driver's license must be exercised in accordance with the provisions of the statute granting such authority. . . ." (Footnotes omitted)

The process whereby a habitual traffic offender's driver's license is revoked is an administrative hearing performed by the court on behalf of the Bureau of Motor Vehicles not a civil or criminal trial. There is no constitutional right to a jury trial in this kind of administrative, or at least quasi-administrative, proceeding.[2] Although the right to trial by jury may be enlarged, but not diminished by statute,[3] a careful reading of IC 1971, 9-4-13-10 (Burns Supp. 1977) discloses that only a hearing before the court is contemplated and not a jury trial. We, therefore, hold that there is no merit to Owens' contention that the Habitual Traffic Offenders Act unconstitutionally denies him his right to trial by jury.

*Issue Five*

Owens next contends that, assuming, *arguendo*, that the Habitual Traffic Offender Act is constitutional, it is nevertheless applied in such an arbitrary and capricious manner that it denies him his constitutional right of equal protection of the laws. We disagree.

---

2. See 1 DAVIS ADMINISTRATIVE LAW TREATISE 594 (1st ed. 1958), where it states: "The Sixth Amendment requires jury trials in all criminal prosecutions, and the Seventh Amendment requires jury trials 'in Suits at common law, where the value in controversy shall exceed twenty dollars. Administrative agencies do not impose criminal penalties, and proceedings before agencies are not suits at common law. . . ." (Footnote omitted)

3. See *Hiatt v. Yergin, supra.*

Owens is correct in stating that U.S. CONST., amend. XIV prohibits any state from denying to any person within its jurisdiction the equal protection of the laws. This denial of equal protection can take either of two forms, *id est*:   (1) The law itself discriminates on its face against a protected class of persons, or (2) the manner in which the law, which is otherwise constitutional, is administered by state officials discriminates against a protected class of persons. In the case at bar we are only concerned with the latter.

Owens presented evidence at his hearing which showed that, although the Habitual Traffic Offenders Act requires that the drivers' licenses of all persons who commit a certain number of specified traffic violations be suspended for ten years, the statistics from the Bureau of Motor Vehicles show that only 25 per cent of those who were certified as habitual traffic offenders actually had their licenses suspended. Owens contends that the enforcement procedures of the Habitual Traffic Offenders Act, as administered by the Bureau of Motor Vehicles, the county prosecutors, the Attorney General, and the courts, constitute something which is not much better than a lottery. We disagree.

First of all, Owens' statistics are incomplete. They fail to show how many cases involving habitual traffic offenders are now pending at the trial court level or on appeal. Owens presented other statistics which were too speculative in nature to be utilized by this court in evaluating Owens' equal protection argument. We cannot properly evaluate a constitutional argument which is based upon incomplete and speculative evidence.

Even if the evidence were complete and substantial we would, nonetheless, find no violation of Owens' right to equal protection of the laws. In 16 Am.Jur.2d 930, Const.Law § 541, it states:

"Mere errors of judgment by officials will not support a claim of discrimination violative of constitutional guaranties of equality. *Moreover, it is not enough to show that a law or ordinance has not been enforced against other persons as it is sought to be enforced against the person claiming discrimination. Mere laxity in the administration of the law, no matter how long continued, is not and cannot be held to be a denial of the equal protection of the law.* **To**

establish arbitrary discrimination inimical to constitutional equality, there must be something more, something which in effect amounts to an intentional violation of the essential principle of practical uniformity. Some courts have taken the position that in the absence of facts properly pleaded, showing a fixed and continuous policy of unjust discrimination on the part of a municipality, they will not enter on a consideration of the question whether its administration is in violation of the guaranties as to the equal protection of the laws." (Footnotes omitted) (Our emphasis)

In the case at bar the alleged action, or rather inaction, of the governmental officials involved, would appear to be founded in a mere laxity to administer the law and not in an intentional scheme to discriminate against a certain protected class of persons to which Owens belongs. We find no denial of equal protection.

*Issue Six*

Owens next contends that the suspension of his driver's license for ten years is cruel and unusual punishment and is, therefore, in violation of the constitution.

This court in *Hamilton v. State, supra*, at 323 N.E.2d 660-661, states:

"It should be noted that the Habitual Traffic Offenders Statute imposes no penalty, punitive or otherwise, on persons with prior convictions for traffic offenses. The statute embodies no further implications of guilt than are contained in the original convictions. The statute is inoperative until the accused is convicted, in a judicial proceeding, of certain traffic offenses, at least one of which must have occurred after September, 1972. The finding of guilt in a judicial trial is implicit in the statute.

Once the statute imposes its sanctions upon a person convicted of the requisite traffic offenses, the intent is purely regulatory, not punitive. The legislature enunciated the purpose of the statute as follows:

'Purpose of law.—It is the purpose of this chapter [9-4-13-1 — 9-4-13-18] to reduce the number of motor vehicle accidents in this state and to provide greater safety to the motoring public by denying to habitual traffic offenders the privilege of operating a motor vehicle. [IC 1971, 9-4-13-1, as added by Acts 1972, P.L. 81, § 1, p. 510].'

The statute merely seeks to ban from the public highways those individuals whose disregard for the traffic laws is inconsistent with

the lawful regulation of an activity which involves the health and safety of the state citizenry.

'The purpose of the law is to classify those who — in the interest of the public safety and health — should be prohibited from using the highways. The same rationale could be used where a statute prohibits a person with impaired eyesight from driving. A classification based upon conditions existing prior to the statute, although retrospective in application, is not constitutionally infirm when the classification is relevant to the object of the statute, in this case, public safety and health.' State ex rel. VanNatta v. Rising, *supra*, 310 N.E.2d at 874-875."

In that the primary purpose of the Habitual Traffic Offenders Act is to remove from the highway those drivers who have proven themselves to be unfit to drive, and who pose a substantial threat to the safety of others, and in that its purpose is not to impose punishment, it cannot be said that such regulatory action constitutes cruel and unusual punishment.

*Issue Seven*

Owens contends that the Habitual Traffic Offenders Act unconstitutionally denies due process of law in that it allows the court no discretion in imposing the alleged penalty. Owens' contention is without merit.

All of Owens' arguments concerning Issue Seven treat the imposition of a ten year suspension of his driver's license as a kind of punishment. He analogizes from the criminal law where mitigating and aggravating circumstances are considered in making a decision to either lessen or increase the punishment. Owens, therefore, contends that mitigating and aggravating circumstances should be considered in deciding the length of his suspension from driving.

We point out, however, that the analogy from the criminal law is not complete. The ten year suspension for a violation of the Habitual Traffic Offenders Act is a protective device, not a punitive one.[4] Owens was punished for his traffic offenses after his various trials concerning those matters. Punishment is not the real issue here. The license revocation following the habitual traffic offender hearing is a reasonable means whereby the public can protect itself from

---

4. See *Hamilton v. State, supra.*

people who manifest a proclivity to drive in such a way that they pose a constant threat to the lives and safety of other people.

No one would seriously contend that a person who cannot see or a person who is subject to frequent blackouts or convulsions should be licensed to drive an automobile on public thoroughfares. The person who will not drive safely is as dangerous as one who cannot drive safely. Persons proceeded against under the Habitual Traffic Offenders Act are given sufficient notice and opportunity to be heard to satisfy due process.[5] Also, the revocation of a habitual traffic offender's driver's license is a reasonable and proper use of the police power of the State.[6]

It is evident that the Habitual Traffic Offenders Act does not give the court discretion in remedying the matter before the court. However, such lack of a grant of discretionary power does not render the statute arbitrary and capricious. The legislature prescribed the rules and the consequences of failure to abide by the rules well in advance of Owens' final serious traffic infraction. Owens knew the rules, and he chose to break them. Therefore, he must live with the predetermined consequences.

The State cannot wait until the mangled and lifeless body of a child lies silently by the roadside before it attempts to remove a reckless or drunken driver from its list of licensed drivers. The potential for the destruction of life and property is too great to permit irresponsible people, who have demonstrated a disregard for the safety of themselves and others, to drive on public thoroughfares. If Owens wants to prove that he is a safe and responsible driver, he will have that opportunity after ten years have elapsed.

---

5. See *State v. Rising, supra.*

6. See *Hamilton v. State, supra.* In 16 Am.Jur.2d 935, Const.Law § 544, it states: "The due process clause has as its purpose the insuring of the fair and orderly administration of the laws. The guaranty is inapplicable where there is no interference with life, liberty, or a vested property right. And it was not designed to interfere with the power of the state to protect the lives, liberty, and property of its citizens or with the exercise of that power in the adjudications of the courts of the state in administering the process provided by the law of the state." (Footnotes omitted)

*Issue Eight*

Owens finally contends that the trial court deprived him of his constitutional right against self-incrimination by requiring him to testify against himself. This contention is also without merit; it was rejected by this court in *Hardin v. State ex rel. VanNatta* (1978), 176 Ind.App. 514, 376 N.E.2d 518. We take this opportunity to reaffirm this court's position on this matter as it is found in *Hardin, supra.*

Judgment affirmed.

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 382 N.E.2d 1312.