**INDIANA BUREAU OF MOTOR VEHI-CLES, Michael M. Packard, in his Capacity as Commissioner of the Bureau of Motor Vehicles, Jack N. Worland, in his Capacity as Director of the Defensive Driving Department, Appellants,**

v.

**Thomas L. ZIMMERMAN, Appellee.**

No. 1183S423.

Supreme Court of Indiana.

April 3, 1985.

Linley E. Pearson, Atty. Gen., Arthur M. Small, Deputy Atty. Gen., Indianapolis, for appellants.

Stephen M. Maish, Patrick A. Mysliwy, Maish & Mysliwy, Merrillville, for appellee.

PIVARNIK, Justice.

This cause comes directly to this Court since 1981 Ind.Acts 108, § 23, codified at Ind.Code § 9–4–7–10 (Burns Supp.1984) [superceding Ind.Code § 9–4–7–10 (Burns 1980)] was found by the trial court to be unconstitutional in its provisions and in its application to Plaintiff-Appellee Thomas Zimmerman. The statute became effective on the first day of September, 1981, and provides as follows:

"(a) If during any twelve [12] month period, a person has committed moving traffic violations for which he has:

(1) Been convicted of at least two [2] traffic misdemeanors;

(2) Had at least two [2] traffic judgments entered against him; or

(3) Been convicted of at least one traffic misdemeanor and has had at least one traffic judgment entered against him;

the bureau of motor vehicles may require the person to attend and satisfactorily complete a defensive driving school program. The person shall pay all applicable fees as required by the bureau of motor vehicles.

(b) The bureau of motor vehicles may suspend the driving license of any person who:

(1) Fails to attend a defensive driving school program; or

(2) Fails to satisfactorily complete a defensive driving school program; as required by this section.

(c) ...."

After Ind.Code § 9-4-7-10 was enacted in 1981, Defendant-Appellant Michael M. Packard, Commissioner of Defendant-Appellant Bureau of Motor Vehicles [hereinafter "Bureau"], directed that the Bureau's computer be programmed to identify individuals required by this statute to attend the Bureau's defensive driving course and to generate letters notifying those individuals of their required attendance in the course. Defendant-Appellant Jack Worland, Director of the Bureau's Defensive Driving Department, was delegated the responsibility of implementing this statute which was perfected in January, 1982. On January 25, 1982, a computer generated letter advising Plaintiff of his required attendance in a defensive driving course was sent. This letter, received by Plaintiff on or about January 27, 1982, first generally indicated the provisions of Ind.Code § 9-4-7-10. It then stated that since Plaintiff had been convicted of a moving traffic violation in June, 1981, and in October, 1981, he was to attend the defensive driving school to be held near where he resided on four separate dates in February, 1982, and would be required to pay a fee of $20.00. The letter indicated that if he was not able to make one of the dates, he would be given a makeup date. Moreover, the letter admonished that the failure to attend the driving course or to satisfactorily complete the course would result in a suspension of his driver's license pending satisfactory completion.

Plaintiff, through his attorney Aaron Mark Cassady, first contacted the Bureau by telephone to object to the Bureau's requirement that he attend a defensive driving course. At that point he talked only to a secretary who advised him that he would have to attend the course. On February 5, 1982, Attorney Cassady sent a letter to the Bureau objecting to the January 25 letter and demanding a hearing before any action was taken requiring Plaintiff to attend the driving classes or suspending his driver's license. On February 8, 1982, a second notice was sent to Plaintiff which was similar to the first letter except that it indicated different dates for attendance at the defensive driving course.

Jack Worland later filed an affidavit in which he indicated that, because of problems in programming the computer for this project, this second notice was among others that were mistakenly sent and was not meant to be a response to Attorney Cassady's letter.

Attorney Cassady *sua sponte* decided that the Bureau was not going to give Plaintiff the benefit of any hearings and, believing Plaintiff's only remedy was in Indiana's Administrative Adjudication Act which includes certain time limits for bringing actions under that act, he concluded that a complaint needed to be filed immediately. A complaint was then filed on February 8, 1982, in the Lake Circuit Court. In the body of the complaint entitled "Verified Complaint and Petition for Judicial Review", Plaintiff asked for declaratory and injunctive relief and for a judicial review of the presumably final action by the Bureau. The complaint alleged that Ind.Code § 9-4-7-10 and its implementation by the Bureau violated the constitutions of the United States and of the State of Indiana in that the statute violated Plaintiff's substantive due process rights, was an *ex post facto* law and was a bill of attainder which substituted a legislative determination of guilt for a judicial one. Specification 14 in Plaintiff's Complaint also provided:

"That the Bureau's actions, under color of State Law, in subjecting Plaintiff to a deprivation of his Constitutional rights, privileges, and immunities renders Defendants liable to Plaintiff under 42 U.S. C.A. § 1983."

The prayer in Plaintiff's complaint requested the trial court to enter a declaratory judgment declaring that the policies, practices, acts and omissions of the defendants violate the Constitutions of the United

States and of the State of Indiana in the manner specified by Plaintiff's claims. Plaintiff further prayed for the issuance of a preliminary and permanent injunction restraining Defendants, their successors, officers, agents, and employees, from applying Ind.Code § 9–4–7–10 in a retrospective manner to Plaintiff and asked that Plaintiff be awarded his attorney's fees. The cause was venued to Jasper County.

On March 29, 1982, Plaintiff received a letter from Jack Worland advising him that his driving record had been reviewed whereupon it was noted that one of his traffic violations occurred prior to September 1, 1981. Plaintiff was further advised that, due to this fact, he was being dismissed from attending the defensive driving classes. He was given a telephone number to call should he have any questions.

We note upon examination of the entire record in this cause that the trial court never disposed of any of the issues raised by Plaintiff in his complaint by any finding, order, or judgment *on the merits*. Moreover, we find that the only judgment entered by the trial court was to award Plaintiff $4,000 for attorney's fees and $200 for expenses incurred by his counsel. These fees and expenses were allowed pursuant to 42 U.S.C.A. § 1983 (West 1981) because the trial court decided that Plaintiff's constitutional rights were violated by the provisions of Ind.Code § 9–4–7–10 and by its implementation against Plaintiff.

On April 7, 1982, Defendants filed a Motion to Dismiss alleging, *inter alia*, that the withdrawal of the Order to Plaintiff by the Bureau mooted the issues enumerated in Plaintiff's complaint. The record shows that the trial court heard the motion to dismiss in Defendants' absence and denied it. Defendants filed a Motion for Reconsideration showing that they did not have notice of the hearing on the original motion to dismiss which the record discloses was true. Defendants' Motion for Reconsideration, however, was never ruled on by the trial court. Plaintiff's cause then proceeded through its various stages in the trial

court, although it is not clear which issues the parties intended to have resolved by the trial court through trial. Although the issues raised by Plaintiff's complaint had not been disposed of by the trial court, their resolution was abandoned by the parties except for the question of whether Plaintiff was entitled to attorney's fees pursuant to 42 U.S.C. § 1983 because Defendants had impinged upon Plaintiff's constitutional rights. It would appear that if, *arguendo*, Defendant's actions on January 25 and on February 8, 1982, ordering Plaintiff to appear for defensive driving classes did impinge upon Plaintiff's constitutional or civil rights, then that impingement ended no more than sixty days later on March 29, 1982, and any attorney's fees and expenses should be determined to that point. It appears, however, that the only issue determined after March 29 was whether or not Plaintiff was entitled to his attorney's fees and expenses which mostly were generated in the succeeding fourteen months before judgment was entered on May 13, 1983. These conclusions are arrived at by examining the filings and the pleadings of the parties.

Although both parties recite in their pre-trial contentions filed in December, 1983, that questions remain as to the constitutionality of Ind.Code § 9–4–7–10 and to its applicability to Plaintiff, the only damage pursued by Plaintiff was his expenditure of attorney's fees based on eighty hours at the rate of fifty dollars per hour (for a total of four-thousand dollars) and his attorney's expenses of two-hundred dollars. In April, 1983, the parties filed their respective Motions for Summary Judgment. Defendants prayed for summary judgment based on the fact that there was no cause or controversy before the trial court since the Bureau had rescinded its orders on March 29, 1982. Defendants further claimed that Ind.Code § 9–4–7–10 and its application to Plaintiff was constitutional. Plaintiff's Cross Motion for Summary Judgment stated: "No factual issues remains (sic), except for the amount of reasonable attorney's fees to be awarded by the Court." The prayer of Plaintiff's Cross Motion for Sum-

mary Judgment requested the trial court to enter summary judgment in favor of Plaintiff and to award Plaintiff a judgment in the amount of his reasonable attorney's fees.

The trial court heard arguments on the Motions for Summary Judgment and took them under advisement on May 13, 1983. The trial judge thereafter filed what is designated as an "order" by which the trial court stated:

"The Court now finds that the following issue is material to the issuance of a summary judgment: Whether or not the plaintiff herein is entitled to recover attorney's fees and expenses for the bringing of this action due to the orders by the Bureau of Motor Vehicles to the plaintiff to attend the Defensive Driving School."

The trial court then concluded that the issue before the court was whether the State of Indiana had violated Plaintiff's rights as protected by 42 U.S.C. § 1983. In successive findings as set forth in its order, the trial court found that Ind.Code § 9–4–7–10 and its implementation by the Bureau was unconstitutional under the United States Constitution since said Constitution prohibits Bills of Attainder and *Ex Post Facto Laws*. In the final paragraph of its Order, the trial court held:

"Therefore, the Court finds that the actions by the Bureau of Motor Vehicles are in violation of *42 U.S.C.A. § 1983* and that the defendant is entitled to his expenses incurred in resisting the directives by the Bureau of Motor Vehicles and therefore awards attorney's fees in the sum of $4000.00 as it submitted to the Court pursuant to stipulation of facts, and expenses in the sum of $200.00. All costs of this action taxed adverse the defendant, State of Indiana."

■ Courts should not consider the constitutionality of an act of the Legislature if the issue before it can be resolved in some other manner. A court also should not decide an issue when there is no cause or controversy before it since any judgment entered thereon would be advisory and not dispositive of anything. Here, the Bureau withdrew its orders on March 29, 1982, no more than sixty days after issuing them, and the issues before the trial court at that time became moot. The trial court should have found the issues moot and should have dismissed the cause at that time. The parties and the trial court virtually recognized this posture of the case since there was no subsequent request for any declaratory judgment and no injunctive relief was sought against the defendants. Indeed, there was nothing to enjoin since enforcement against the plaintiff had ceased. Although no such relief was pursued or contemplated either under the Indiana Administrative Adjudication Act or under 42 U.S.C. § 1983, the trial court was correct in its finding that the lack of formal judicial relief does not, of itself, deprive plaintiffs of prevailing party status or, in other words, attorneys fees may still be appropriate under 42 U.S.C.A. § 1988 (West 1981) even though plaintiffs have vindicated their rights by settlement. *Harrington v. DeVito*, (7th Cir.1981) 656 F.2d 264, 266, *cert. denied*, (1982) 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854; *Nadeau v. Helgemoe*, (1st Cir.1978) 581 F.2d 275, 279. This relief is based, however, on the maintenance of a viable § 1983 action that demonstrates constitutional impingement of a plaintiff's rights. No such action was apparent here.

■ Had the Bureau attempted to enforce the provisions of Ind.Code § 9–4–7–10 against Plaintiff based on traffic violations all of which occurred prior to the effective date of 1981 Ind.Acts 108, § 23, as Plaintiff's complaint contended, constitutional questions might have been presented. The record clearly shows, however, that one of Plaintiff's violations and convictions came in October, 1981, a month after the effective date of the statute. In *State ex rel. VanNatta v. Rising*, (1974) 262 Ind. 33, 310 N.E.2d 873, this Court considered the constitutionality of the "Habitual Traffic Offenders Statute", Ind.Code § 9–4–13–1 (Burns 1980), *et seq.* That statute provided that after three convictions for driving while intoxicated, a person could be

found to be a habitual traffic offender thereby subjecting him to a suspension of his driver's license for a period of ten years. The Habitual Offenders statute specifically provided that it shall be operative when there have been three such convictions, only one of which need be subsequent to the date of the enactment of the statute. The defendant in *Rising* was charged under the Habitual Offenders statute for three convictions of driving while under the influence, two of which convictions were prior to the enactment of the statute and one conviction subsequent to it. In discussing the *ex post facto* aspect of the Habitual Offenders statute, this Court found that said defendant was not being punished for the act of driving while intoxicated which occurred prior to the enactment of the statute but was being found guilty of a crime or act and was being punished for the act of driving while intoxicated, having twice previously been convicted of driving while intoxicated. In this Court's opinion, offered by Justice Arterburn (DeBruler, J., dissenting), we held:

> "Thus, habitual criminal and habitual traffic offender statutes are not *ex post facto* laws since they do give notice that if persons persist in certain behavior they will be punished more severely than previously.
>
> .  .  .  .  .
>
> Thus, although this is not a criminal proceeding, it nevertheless complies with the due process requirements of similar criminal proceedings. It is true that the statute before us does have retrospective characteristics in that it takes into consideration for classification purposes certain events which were in existence or occurred prior to the enactment of the statute. We find nothing invalid in this respect. The purpose of the law is to classify those who—in the interest of the public safety and health—should be prohibited from using the highways. The same rationale could be used where a statute prohibits a person with impaired eyesight from driving. A classification based upon conditions existing prior to

the statute, although retrospective in application, is not constitutionally infirm when the classification is relevant to the objective of the statute, in this case, public safety and health. *Kirtley v. State*, (1949) 227 Ind. 175, 84 N.E.2d 712; *State Board of Barber Examiners v. Cloud, et al.*, (1942) 220 Ind. 552, 44 N.E.2d 972; *Blue v. Beach, et al.*, (1900) 155 Ind. 121, 56 N.E. 89. The operation of this statute, which results in the deprivation of the license to drive, is not a punishment as a result of a criminal proceeding, but is rather an exercise of the police power for the protection of the public. The appellee is not receiving increased punishment for the previous convictions, but is automatically falling into a class of persons prohibited from driving on the public highways for the protection of the remaining public using the highways. We find nothing presented to us that shows the statute to be unconstitutional."

*Rising*, 262 Ind. at 35–36, 310 N.E.2d at 874–875.

Accordingly, we interpret 1981 Ind.Acts 108, § 23, to be applicable to those individuals that fall under its provisions only after its effective date and therefore there are no grounds for finding Ind.Code § 9–4–7–10 (Burns Supp.1984) unconstitutional in its provisions. The fact that one of the Plaintiff's convictions preceded the effective date of the act does not make its application to him unconstitutional.

The judgment of the trial court is reversed and this cause is remanded to the trial court with instructions to enter judgment for Defendants-Appellants.

GIVAN, C.J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., concurs in result.