ATTORNEYS FOR APPELLANT
William R. Groth
Geoffrey S. Lohman
Fillenwarth Dennerline Groth and Towe
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
David W. Brooks
Brooks, Koch & Sorg
Indianapolis, Indiana

Marion O. Redstone
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court

_____

No. 49S00-0501-CV-17

KAREN C. HORSEMAN,

*Appellant (Cross-Appellee below),*

v.

J. SCOTT KELLER,

*Appellee (Cross-Appellant below).*

_____

Appeal from the Marion Superior Court, Civil Division 10, No. 49D10-0311-MI-001998
The Honorable David Dreyer, Judge

_____

On Direct Appeal

_____

**January 31, 2006**

**Rucker, Justice.**

The trial court affirmed a decision of the court-appointed Recount Commission that concluded J. Scott Keller was the winner of the 2003 election for the Marion County City-County Council District 16 seat. In so doing the trial court also declared unconstitutional an absentee voting statute. We previously announced (on February 11, 2005) that we agreed with the trial court's conclusion concerning the ultimate outcome of the election. However, we disagree with its decision concerning the constitutionality of the statute and now write to explain our reasoning.

**Facts and Procedural History**

Marion County employed new voting machines during the November 2003 general elections. These machines provided voters with paper ballots that included a line for write-in candidates.

The November 4, 2003 Marion County municipal elections included a contest for the office of City-County Councilor of the Indianapolis City-County Council District 16. On the ballot were Karen C. Horseman ("Horseman"), Democrat, J. Scott Keller ("Keller"), Republican, and one other candidate.

Horseman and Keller garnered most of the votes. The initial results showed Keller with 1,407 votes and Horseman with 1,404 votes. Horseman filed a Verified Petition for Recount on November 10. Ind. Code § 3-12-6-1. On December 17 the court-appointed Recount Commission ("Commission") determined that Keller received 1,408 votes and Horseman 1,403 votes. The three-member Commission reached its conclusion after inspecting each individual ballot and voting on whether certain contested ballots could be counted. Horseman appealed the Commission's determination to the Marion Superior Court. Ind. Code § 3-12-6-22.5. Three voters from District 16 marked a section of the ballot indicating that they wished to cast straight Democratic Party tickets. However, these voters also used the available write-in line to vote for individuals other than Horseman for the District 16 Council seat. One voter wrote in Ricky

Hence, the Democratic candidate for District 1, one wrote in Patrice Abduallah, the Democratic candidate for District 15, and one wrote in Katherine Caldwell Kennedy, the Democratic candidate for District 25. The Commission did not include these ballots as votes for Horseman.

Two absentee ballots containing votes for Horseman were received but not counted. The Commission determined that these ballots were correctly rejected pursuant to Indiana Code section 3-12-1-13 because they did not bear the initials of two members of the Marion County Election Board and/or its official seal. The absence of initials or seals on these two ballots was apparently due to human error.

Concluding that the Commission's decision concerning the three disputed ballots was based on questions of fact which were not reviewable, the trial court addressed only the issue of the validity of the two absentee ballots. It determined that the statute disallowing these two ballots violated Article 1, Section 23 of the Indiana Constitution and that the votes must therefore be credited to Horseman. Thus, the court concluded that Keller won the election by three votes as opposed to five.

Both parties filed motions to correct error, which the trial court denied. On March 15, 2004, Horseman appealed to the Indiana Court of Appeals. It was not until late December 2004 that the parties finished submitting filings to that court. On January 14, 2005, the Court of Appeals realized that this case involved a trial court declaring a statute unconstitutional. Because this Court has mandatory and exclusive jurisdiction over such cases, see Ind. Appellate Rule 4(A)(1)(b), we received this matter on January 18, 2005. Because substantial time had elapsed before this Court received the case and because it involved a matter which could significantly impede local governance absent resolution, this Court promptly reviewed the arguments and issued an order on February 11, 2005, affirming the outcome of the election in Keller's favor. We declared that the Court would issue in due course a more extensive opinion reflecting the Court's reasoning. In Re: Horseman and Keller, Case No. 49S00-0501-CV-17 at 2 (Ind. Feb. 11, 2005) (unpublished order). We now undertake to do so.

3

**Discussion**

At issue in this appeal are five contested ballots.[1]  To determine the fates of these ballots, we are asked to examine two questions: first, whether Indiana law recognizes write-in votes cast for individuals who are not registered write-in candidates as votes for the nominated same-party candidate in an electoral race where the voters otherwise selected the straight ticket ballot option, and second, whether Indiana Code section 3-12-1-13 is unconstitutional.

The Write-In Votes

The Commission's decision to exclude the three contested straight ticket ballots from Horseman's tally is not an appealable determination.  Indiana Code section 3-12-6-22.5 limits an appeal of the Commission's findings to "questions of law arising out of the recount" and "procedural defects by the recount commission that affected the outcome of the recount."  The trial court declined to address the merits of Horseman's arguments about these three ballots because it determined that the exclusion was a determination of an issue of fact.  Namely, the trial court determined that the issue at bar was the "intent" of the voters under Indiana Code section 3-12-1-1.  It correctly noted that intent is a question of fact under Indiana case law.  See, e.g., Wright v. State, 690 N.E.2d 1098, 1104 (Ind. 1997) (trial court's finding of discriminatory intent was a finding of fact); Gibson County Farm Bureau Coop. Ass'n, Inc. v. Greer, 643 N.E.2d 313, 320 (Ind. 1994) (whether parties intended a writing to create a security interest was a question of fact); Deming Hotel Co. v. Sisson, 216 Ind. 587, 24 N.E.2d 912, 915 (1940) ("question of fraudulent intent is a question of fact").

Horseman contends that the Commission's decision is appealable.  She argues that the Commission's conclusion involved a determination of the application of Indiana Code section 3-12-1-7.5(a).  Specifically, she asserts that the statutory meaning of the term "candidate" is at issue.  And the law is clear that "[t]he interpretation of a statute . . . is not a question of fact, but one *of law* reserved for the courts."  Joseph v. Lake Ridge Sch. Corp., 580 N.E.2d 316, 319 (Ind.

---

[1] On cross-appeal, Keller also challenges the Commission's determination concerning one other ballot which he contends should not have been counted for Horseman.  Because this case is resolved on other grounds, we decline to address this issue.

4

Ct. App. 1991) (emphasis added).  See also Bettenbrock v. Miller, 185 Ind. 600, 112 N.E. 771, 774 (1916) ("The courts are charged finally with the responsibility of construing doubtful statutes . . . ."); Figg v. Bryan Rental Inc., 646 N.E.2d 69, 72 (Ind. Ct. App. 1995) ("The interpretation of a statute is a question of law . . . .").  Indeed, if the statutory definition of "candidate" were at issue, it would be the clear province of the courts to evaluate it on appeal. Ind. Code § 3-12-6-22.5.

The three contested ballots contain straight Democratic Party votes but also attempt to vote for Democratic candidates from different Council district races.  The Horseman-Keller race was for District 16, but the three contested ballots contain write-in votes for Democratic candidates from Districts 1, 15, and 25.  Horseman, who was the District 16 Democratic Party candidate, argues that the write-in votes, but not the ballots, should be ignored because they are not for "candidates" for the District 16 race and thus cannot, under Indiana Code section 3-12-1-7.5(a), take votes that would have been hers if the voters had left their write-in lines blank. Alternatively, Horseman claims these three ballots should be counted in her favor because the voters manifested the intent to cast Democratic ballots.[2]

Horseman rests her first argument upon the language of Indiana Code section 3-12-1-7.5(a), which reads:

> Sec. 7.5.  If a voter votes a straight party ticket for at least one (1) office for which only one (1) person may be elected and writes in the name of a candidate, the straight party ticket vote shall be counted for all offices except the offices for which a write-in vote was cast.  The write-in vote shall be counted if the voter's intent can be determined.

She asks us to construe the statutory meaning of "candidate" to exclude from its scope those individuals written in on the three contested ballots.  Because, Horseman argues, no alternative "candidates" were written in on the ballots, Indiana Code section 3-12-1-7.5(a) does not remove votes from her tally.

---

[2] Because we hold that the trial court's finding that the Commission made a finding of fact is not clearly erroneous, this argument need not be discussed.

However, we need not interpret 3-12-1-7.5(a) because the Indiana legislature has provided us the guidance of another statutory provision that renders an analysis of "candidate" immaterial here. Provisions of the Indiana Code do not stand alone; the statutes complement each other and must be applied harmoniously. Freeman v. State, 658 N.E.2d 68, 70 (Ind. 1995) ("[W]here two statutes address the same subject, they are in *pari materia*, and we strive to harmonize them where possible."); Matter of Lemond, 413 N.E.2d 228, 246 (Ind. 1980). Indiana Code section 3-12-1-1 reads:

> Sec. 1. Subject to sections 5, 6, 8, 9, 9.5, and 13 of this chapter, the primary factor to be considered in determining a voter's choice on a ballot is the intent of the voter. If the voter's intent can be determined on the ballot or on part of the ballot, the vote shall be counted for the affected candidate or candidates or on the public question. However, if it is impossible to determine a voter's choice of candidates on a part of a ballot or vote on a public question, then the voter's vote concerning those candidates or public questions may not be counted.

The trial court found that the Commission made a finding of fact regarding the intent of these three voters. App. at 58. We review a lower court's findings of fact for clear error. Infinity Products, Inc. v. Quandt, 810 N.E.2d 1028, 1031 (Ind. 2004). "Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them . . . ." Id. Further, when evaluating findings of fact for clear error, "we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom." Id. The evidence in the record supports the trial court's finding that the Commission made a finding of voter intent. From the transcript of the Commissioner's meetings, it is clear that the Commissioners contemplated whether their determinations regarding these three ballots reflected findings of fact and law. App. at 64 (quoting Ex. A at 96), 65-67 (quoting Ex. A at 100-104). And it is clear that at least one Commissioner believed that the exclusion of the three ballots was based at least partially upon Indiana Code section 3-12-1-1. App. at 64 (quoting Ex. A at 96). Thus, we cannot conclude that the trial court's finding was clearly erroneous.

Therefore, we are faced with a finding of fact from the Commission that these three voters did not intend to cast votes for Horseman. And under Indiana Code section 3-12-6-22.5

6

findings of fact by the Commission are not appealable. Thus, we affirm the determination that the three write-in ballots may not be included in Horseman's tally.

We take the opportunity to note that even if we recognized the need to interpret "candidate," the result would remain the same. Indiana's election laws strive to uphold the Indiana Constitution by protecting the virtues of freedom and equality in the electoral process. Hathcoat v. Town of Pendleton Election Bd., 622 N.E.2d 1352, 1354 (Ind. Ct. App. 1993). And in its efforts to prevent fraud, undue influence, and oppression in the process, the Indiana legislature has given the voter's intent a central role. Borders v. Williams, 155 Ind. 36, 57 N.E. 527, 529 (1900); Ind. Code § 3-12-1-1. It is illogical to say that votes *not* cast for a candidate should be deemed cast for that candidate. An analysis of the facts of this case against the backdrop of Indiana Code section 3-12-1-1 would lead to a determination that these three voters did not definitively intend to vote for candidate Horseman, and thus their votes would remain uncounted.

Indiana Code Section 3-12-1-13

Also at issue are two absentee ballots. These two ballots contained votes for Horseman but were left uncounted by the Commission because they did not conform to the requirements of Indiana Code section 3-12-1-13. An appeal of this decision led the trial court to declare Indiana Code section 3-12-1-13 unconstitutional under Article I, Section 23 of the Indiana Constitution. Thus the trial court ordered that these two votes be included in Horseman's tally.

While our holding pertaining to the write-in ballots settles the ultimate question of which candidate prevails, it is important to address the trial court's determination regarding Indiana Code section 3-12-1-13.[3] Typically, the doctrine of mootness leads courts to decline to address

---

[3] It is unclear why the trial court declared Indiana Code section 3-12-1-13 unconstitutional rather than section 3-12-1-12(b), which is actually the statutory provision that excludes absentee voters from the protections included in section 3-12-1-12. Section 3-12-1-13 merely sets out the endorsement requirements for absentee ballots and is paralleled by section 3-12-1-2, which prescribes the endorsement requirements for Election Day ballots. Because the trial court's order dealt with the contents of section 3-12-1-12(b) while referring to section 3-12-1-13, our analysis of section 3-12-1-13 should be understood to evaluate section 3-12-1-13 in conjunction with section 3-12-1-12(b).

the merits of claims that have otherwise been resolved.  Ind. Bureau of Motor Vehicles v. Zimmerman, 476 N.E.2d 114, 118 (Ind. 1985).  Where there is a matter of great public importance, however, and the possibility of repetition, Indiana courts may choose to adjudicate a claim.  Ind. Educ. Employment Relations Bd. v. Mill Creek Classroom Teachers Ass'n, 456 N.E.2d 709, 711 (Ind. 1983).  Public elections will continue to be affected by Indiana Code section 3-12-1-13.  Because the question before us is "capable of repetition, yet evading review," we now address the constitutionality of Indiana Code section 3-12-1-13.  Ray v. State Election Bd., 422 N.E.2d 714, 716 (Ind. Ct. App. 1981) (citing Rosario v. Rockefeller, 410 U.S. 752, 756 n.5 (1973)).

The Indiana legislature is vested with the responsibility of providing state election laws designed to efficiently and fairly govern voting and challenge procedures.

> The Legislature may set up machinery for the conduct of elections, and delegate to ministerial or executive agencies the duty of conducting elections, and may prescribe the procedure by which elections may be contested, so long as they stay within their constitutional powers, and such procedure conforms to the law, such steps and procedure will be governed by the legislative rules prescribed.

State ex rel. Nicely v. Wildey, 209 Ind. 1, 197 N.E. 844, 847 (1935).  We presume that state legislation is constitutional.  Matter of Tina T., 579 N.E.2d 48, 56 (Ind. 1991) ("Legislation . . . is clothed in a presumption of constitutionality.").  Thus, our standard of review where a trial court finds an Indiana statute unconstitutional is even less deferential than *de novo*.  Ind. Dep't of Waste Mgmt. v. Chem. Waste Mgmt., 643 N.E.2d 331, 336 n.2 (Ind. 1994).  "Since statutes are presumed to be constitutional, if there are any grounds for reversing the trial court's judgment we will do so."  Id.

There are three types of absentee ballots included in Indiana Code section 3-12-1-13:  the Walk-in voter, the Mail-in voter, and the Shut-in voter.[4]  The Walk-in voter goes to the county

---

[4] The Brief of Appellee/Cross Appellant mistakenly reports that Shut-in voters are excluded from the scope of section 13.  The trial court apparently relied upon this assertion and did not address Shut-in voters.  We include Shut-in voters in our discussion.

clerk's office and casts his ballot in person. The Mail-in voter mails in his ballot from home or from another location. The Shut-in voter receives a visit from an absentee voter board and casts a ballot pursuant to the requirements of any absentee voter voting before the absentee voter board. Regular ballots (not absentee) are, of course, cast in person at designated polls on Election Day. The statute at issue reads in full:

> Sec. 13. (a) This section applies only to absentee ballots.
> (b)    The whole ballot may not be counted unless the ballot is endorsed with the initials of:
> (1)   the two (2) members of the absentee voter board in the office of the circuit court clerk under IC 3-11-4-19 or IC 3-11-10-26; or
> (2)   the two (2) appointed members of the county election board (or their designated representatives) under IC 3-11-4-19.

Ind. Code § 3-12-1-13.

Indiana Code section 3-12-1-12 permits a recount for votes not counted due to clerical error (except in cases of fraud and the like).[5] However, the section excludes absentee ballots. In other words, an absentee ballot may not be recounted in situations where clerical error by an election officer rendered it invalid. In this way, the statute treats absentee voters differently from the way it treats Election Day voters.

Based on this differentiated treatment, the trial court found the statute unconstitutional under Article 1, Section 23 of the Indiana Constitution, also known as the Equal Privileges and Immunities Clause. This section reads, "The General Assembly shall not grant to any citizen, or

---

[5] Indiana Code section 3-12-1-12 reads in full:
> Sec. 12. (a) This section applies to votes cast by any method.
> (b) *Except as provided in section 13 of this chapter*, a ballot that has been marked and cast by a voter in compliance with this title but may otherwise not be counted solely as the result of the act or failure to act of an election officer may nevertheless be counted in a proceeding under IC 3-12-6, IC 3-12-8, or IC 3-12-11 unless evidence of fraud, tampering, or misconduct affecting the integrity of the ballot is presented by a party to the proceeding.
> (c) The act or failure to act by an election officer is not by itself evidence of fraud, tampering, or misconduct affecting the integrity of the ballot.

(Emphasis added).

9

class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Claims asserted under this section are subject to a two-part test:

> First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

Collins v. Day, 644 N.E.2d 72, 80 (Ind. 1994).

The trial court found that the legislature was not justified in treating *all* absentee ballots differently from Election Day ballots. Specifically, it recognized no characteristics of Walk-in absentee voters that make them inherently different from Election Day voters:

> [T]he law prescribes different standards for persons who vote *in person* at their precinct polling place and those who vote by absentee ballot, even if they also vote *in person*. Under Section 12, a regular voter will not lose their [sic] vote unless there is evidence of fraud, even if an election official fails to act or makes a mistake. But absentee voters do lose their vote merely because of the mistake or failure of a clerk, under Section 13, even when there is no evidence of fraud and the voter has done everything the law requires to enter their vote. Under Collins v. Day, such different treatment of absentee voters is only allowed if it is reasonably related to "<u>inherent</u> characteristics," not "<u>mere</u> characteristics," that supposedly make absentee voters different than the regular voter. Such different treatment must be justified by substantial considerations, not arbitrary or capricious.
>
> Destroying one's fundamental right to vote because of a clerk's mistake is totally unjustified. It is not reasonably related to any inherent characteristic of absentee voters that is different than a regular voter, especially those who vote absentee in person at the Clerk's own office just like regular voters at their neighborhood polling places. Clerks are human and will always make mistakes. But why kill an absentee vote, but not the regular vote? There is no reason, and Section 13 accordingly violates Article 1, Section 23 of the Constitution of Indiana.

> Even if a reasonable argument can be made that absentee voting by mail is "inherently" different, <u>Collins</u> requires a showing that the "preferential" treatment, that is, upholding the right to vote despite clerk's mistakes, must be available to everybody in the same group. Since Section 13 does not differentiate between absentee voting by mail, and absentee voting in person, it still must fail.

App. at 59.

We disagree with the trial court's evaluation of Indiana Code section 3-12-1-13 under <u>Collins</u>. First, we find that there are indeed inherent differences between all absentee voters and Election Day voters. By their very nature absentee ballots differ from Election Day ballots. <u>See</u> Ind. Code § 3-11-4-1. Eligible voters may qualify to cast absentee ballots when faced with certain enumerated circumstances that make it impossible to vote at their polling places on Election Day. While it is true, as the trial court discussed, that some absentee ballots are given by voters directly to election officials, as in Election Day procedures, the "in person" aspect of the ballot-casting does not eradicate the inherent differences between these types of voting. Because the absentee voter is not present at the Election Day polling site, the absentee voter is not exposed to the extensive precautions followed by Election Day officials to guard the integrity of the ballots.[6] The fact that absentee ballots reach the hands of election officials outside of the confines of the Election Day polling place necessitate statutory procedures for receiving, verifying, storing, transporting, and counting these ballots. <u>See, e.g.</u>, Ind. Code §§ 3-11-10-1, 3-11-10-3 to -22. This is true for all absentee balloting, whether by Mail-in, Walk-in, or Shut-in voters.

Second, we find that the combined application of Indiana Code sections 3-12-1-12(b) and -13 reasonably relate to this difference. As we look for a reasonable relationship between the inherent difference between absentee and Election Day voters and the preferential treatment given to Election Day voters under these statutory provisions, we are extremely deferential to the legislature. <u>Collins</u>, 644 N.E.2d at 79-80 ("[T]he courts must accord considerable deference to the manner in which the legislature has balanced the competing interests involved.") (citing

---

[6] For information about polling site procedures and safeguards, see Indiana Election Division, <u>2004 Indiana Election Day Handbook: A Guide for Precinct Election Boards and Poll Workers</u> (2003), http://www.in.gov/sos/elections/pdfs/2004_Election_Day_Handbook.pdf.

Johnson v. St. Vinc. Hosp., Inc., 273 Ind. 374, 404 N.E.2d 585, 604 (1980)). Under Indiana law, an absentee ballot may be irrevocably invalidated by an election official's failure to affix necessary endorsements to the ballot. Where an Election Day ballot lacks the necessary endorsements,[7] however, the language of Indiana Code section 3-12-1-12(b) permits its inclusion in a subsequent recount. As this Court has previously noted, "[t]he importance of having the poll clerks' initials on the ballots . . . insures the integrity of the voting system." Schoffstall v. Kaperak, 457 N.E.2d 550, 554 (Ind. 1984) (citing Wright v. Gettinger, 428 N.E.2d 1212, 1219 (Ind. 1981)).[8] And "[i]n order to keep the integrity of the system it may happen that some individual voters will be disfranchised through no fault of their own, and in situations where they have made an honest effort to vote for the offices of their choice." Wright, 428 N.E.2d at 1220. Although the legislature has included numerous provisions in our code meant to protect the integrity of absentee ballots cast,[9] those provisions cannot safeguard the ballots and the intent of the individual voters to the extent that provisions surrounding Election Day procedures can. For example, Election Day polling sites operate as closed environments. *Only* precinct elections officers (including the election sheriff, inspector, two judges, poll clerks, and assistant poll clerks), deputy election commissioners, authorized watchers, and precinct pollbook holders are permitted in the Election Day polling place except for voters casting ballots and their underage children. Ind. Code § 3-11-8-15; Ind. Election Day Handbook at 4. If a ballot originates from a particular precinct polling place, every election worker present is easily discerned. It is also known that each of those election workers (with the possible exception of the election sheriff) was present at the site for the entirety of Election Day. Ind. Code § 3-11-8-12; Ind. Election Day Handbook at 3. But absentee voters might encounter many other individuals while casting their ballots at home or in the clerk's office, thus allowing greater opportunity for outside influences to impact their votes. And absentee voting may take place over a period of up to ninety days, creating situations in which completed ballots in a precinct are received by different county employees in the presence of a variety of individuals. Ind. Code §§ 3-11-4-4, 3-11-4-18. Thus it

---

[7] See Ind. Code § 3-12-1-2.

[8] Schoffstall discussed a previous code provision.

[9] See Ind. Code §§ 3-11-10-1, 3-11-10-3 to -22.

is reasonable that the legislature believed it in the interests of Indiana voters to more stringently govern absentee balloting.

Finally, we note that the preferential treatment, i.e. access to recount procedures in cases of clerical error, is equally available to all Election Day voters. There is no contention otherwise.

Because we find that the preferential treatment given to Election Day voters under Indiana Code section 3-12-1-13 is reasonably related to the inherently different characteristics of Election Day voters and absentee voters and that all Election Day voters receive the same treatment under the statute, we hold that Indiana Code section 3-12-1-13 is constitutional under Article 1, Section 23 of the Indiana Constitution.

## Conclusion

We affirm that portion of the trial court's judgment that concluded the Recount Commission's findings of voter intent were non-appealable findings of fact. We reverse that portion of the trial court's judgment declaring unconstitutional Indiana Code section 3-12-1-13.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.