**Brad K. GUIDRY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–9409–CR–359.**

Court of Appeals of Indiana, Fourth District.

April 28, 1995.

---

Christopher C. Zoeller, Zoeller & Zoeller, Indianapolis, for appellant.

Pamela Carter, Atty. Gen. of Indiana and Julie Zandstra Frazee, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Brad K. Guidry appeals his conviction of operating a motor vehicle while under suspension of driving privileges, a class D felony. IND.CODE 9–30–10–16.[1]

We affirm.

### ISSUES

Guidry raises the following issues for our review:

1. Whether the State presented sufficient identification evidence to support his conviction.

2. Whether I.C. 9–30–10–16 requires the State to show that he was operating his motor vehicle on a public roadway.

3. Whether the trial court erred in admitting certain evidence.

### FACTS

On July 15, 1992, Guidry was adjudged an habitual traffic violator due to his accumulation of two operating while intoxicated convictions and one conviction for driving while suspended. Guidry was notified of his status and knew that he was not allowed to operate a motor vehicle until his ten year suspension ended on July 15, 2002.

On April 18, 1993, Guidry and his estranged wife, Stacie, had an argument which turned violent. Guidry slapped Stacie's face twice, causing a reddened swelling of her right cheek. Stacie ran to the nearby apartment of Marion County Sheriff's Reserve Deputy Grady Copeland, who worked as on-site security for the complex. Crying and "very hysterical", Stacie told Deputy Copeland what Guidry had done to her. As she began giving Deputy Copeland a description of her husband and the type of car he drove, she saw Guidry driving along the main drive of the apartment complex. She pointed to the vehicle, and said, "That is him, that is my husband." (R. 140–141; 153).

Deputy Copeland looked through the open driver's side window and observed Guidry driving the vehicle. As Guidry drove away, Deputy Copeland went into his own apartment to get his badge, handcuffs, and handgun. He and Stacie then entered his patrol car and began looking for Guidry. He observed the vehicle parked in front of Stacie's apartment; Guidry was walking away toward Stacie's building. As Deputy Copeland exited his vehicle, Guidry proceeded behind the apartment building and disappeared.

Deputy Copeland ran a license plate check on the vehicle and discovered that it was registered to Guidry. A driver's license check indicated that Guidry's license was suspended.

Guidry was later arrested and was charged with operating a motor vehicle while suspended, resisting law enforcement, battery, and trespass. He was convicted of the initial offense; the remaining charges were dismissed. He now appeals his conviction.

### DISCUSSION AND DECISION

#### I. SUFFICIENCY OF THE EVIDENCE

■ Guidry contends the State failed to present sufficient evidence to establish that he was the driver of the car. In reviewing the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Hopkins v. State* (1991), Ind., 579 N.E.2d 1297, 1305. Rather, we consider only the evidence most favorable to the verdict, along with all reasonable inferences to be drawn therefrom. We will affirm the conviction if there is sufficient evidence of probative value to support the verdict. *Collins v. State* (1984), Ind., 464 N.E.2d 1286, 1288.

■ In the present case, Deputy Copeland unequivocally identified Guidry as the man he saw driving Guidry's motor vehicle. As Guidry drove past Deputy Copeland's apart-

---

1. At the time the offense was committed, I.C. 9–30–10–16 provided:
   (a) A person who operates a motor vehicle:
   (1) while the person's driving privileges are suspended under this chapter;

. . . .
commits a Class D felony.

ment, the deputy was able to see clearly into the vehicle because the driver's window was down and Guidry was looking out the window. A few minutes later, Deputy Copeland again saw Guidry near the same car, and watched him walk away from the parked vehicle. As Guidry was walking away, he looked over his shoulder toward Deputy Copeland, giving the deputy a second direct view of his face. At trial, Deputy Copeland identified Guidry as the man he saw driving the vehicle.

■■■ The testimony of a single witness is sufficient to sustain a conviction. *Barrett v. State* (1994), Ind.App., 634 N.E.2d 835, 837. Deputy Copeland's testimony is sufficient to establish that Guidry was driving the vehicle in the apartment complex.[2]

## II. INTERPRETATION OF I.C. 9–30–10–16

■■ Guidry contends that I.C. 9–30–10–16 requires the State to show that a motor vehicle was operated on a public roadway. He contends that the statute cannot be read to prohibit operation of a vehicle on private property. He notes that the evidence is undisputed that he was operating his vehicle on a road located within a private apartment complex.

■■■ We do not place special interpretations or requirements upon statutes which are clear and unambiguous on their face. *Whitacre v. State* (1980), 274 Ind. 554, 412 N.E.2d 1202, 1206. I.C. 9–30–10–16 prohibits operation of a vehicle by a person whose license has been suspended. There is no language requiring proof of operation of a

motor vehicle upon a public highway. If the legislature had wished to limit the focus of the statute to operation of a vehicle upon a highway, it most certainly could have done so.[3] Statutes providing for forfeiture of driving privileges or punishment for habitual violations of the traffic statutes are designed to protect the public from persons who have demonstrated that they are unable to obey traffic laws established for the safety of citizens and that their driving presents a hazard to life and property. *See Owens v. State* (1978), 178 Ind.App. 406, 382 N.E.2d 1312, 1314–1315. The absence of limiting language in I.C. 9–30–10–16 reveals the legislature's recognition that the danger to the public is equally as great on private property used by the public, such as shopping center parking lots and apartment complex roads, as it is on public highways. *See Huey v. State* (1987), Ind.App., 503 N.E.2d 623, 626–627 (holding that Indiana's Operating While Intoxicated statute, which states that "a person who operates a vehicle while intoxicated commits a class A misdemeanor" is not limited to operation of motor vehicles on public highways).[4]

■■■ Guidry contends that if I.C. 9–30–10–16 is interpreted to apply to operation of vehicles on private roads, then it is unconstitutionally vague. A statute is unconstitutional under the vagueness doctrine if the accused "establishes that the statute forbids conduct in terms so vague that persons of ordinary intelligence must necessarily guess at the statute's meaning and differ as to its application." *Van Sant v. State* (1988), Ind.App., 523 N.E.2d 229, 233. Our supreme court has held that a statute is not unconstitutional as vague if "individuals of ordinary

---

2. Guidry claims that Deputy Copeland's testimony is unbelievable. In support of this argument, he cites to a reference made at the sentencing hearing to the deputy's alleged confusion on what Guidry looked like.

   We note that a review of a trial issue is limited to the evidence presented *at trial*. We further note that even if the evidence was admitted at trial, it went to weight and we will not reweigh the evidence.

3. The legislature's ability to limit the focus of the statute is shown by the wording of I.C. 9–4–13–13, the predecessor statute to I.C. 9–30–10–16. In I.C. 9–4–13–13, the legislature limited the focus to operation of a motor vehicle "on public

thoroughfares or on private property which is commonly used by the motoring public...." Consequently, the State was required to show that the accused operated his vehicle on either the public highways or commonly used private property. *Green v. State* (1980), Ind.App., 403 N.E.2d 897, 901.

4. Guidry argues that I.C. 9–30–10–16 is distinguishable from Indiana operating statutes, in that the former is *malum in prohibitum* and the latter are *malum in se*. Guidry fails to establish how this difference mandates that I.C. 9–30–10–16 be read to require proof of operation on public highways.

intelligence would comprehend it to adequately inform them of the conduct to be proscribed. The statute need only inform the individual of the generally proscribed conduct; a statute need not list, with itemized exactitude, each item of conduct proscribed." *Mallory v. State* (1990), Ind.App., 563 N.E.2d 640, 644, *trans. denied.* A statute is void for vagueness only if it is vague as applied to the precise circumstances of the case. *Id.*

The language of I.C. 9–30–10–16 is not vague. It states unequivocally that a person who operates a motor vehicle while his driving privileges are suspended commits a class D felony. An individual reading the statute would understand it to proscribe operation of a vehicle on private roadway used by the general public.

The State was not required to prove that Guidry operated his vehicle on a public highway. Therefore, there was sufficient evidence to convict him of violating I.C. 9–30–10–16.

## III. ADMISSION OF EVIDENCE

■ Guidry contends that the trial court erred in admitting hearsay evidence in the form of Stacie's statements to Deputy Copeland. He also contends that the trial court erred in admitting identification evidence, in the form of the contents of his wallet, that was obtained from an allegedly illegal search of his vehicle.

Guidry did not object to the admission of this evidence at trial. By not making a contemporaneous objection, Guidry failed to preserve the issue of admission for appeal. *Von Almen v. State* (1986), Ind., 496 N.E.2d 55, 57. The issue is waived.

### CONCLUSION

The State presented sufficient evidence to support Guidry's conviction. Admission of evidence issues were waived.

Affirmed.

CHEZEM and SULLIVAN, JJ., concur.