**STATE of Indiana, Appellant–Plaintiff,**

v.

**Frederick DRUBERT, Jr.,
Appellee–Defendant.**

**No. 50A05–9703–CR–106.**

Court of Appeals of Indiana.

Nov. 10, 1997.

Jeffrey A. Modisett, Attorney General, James D. Dimitri, Deputy Attorney General, Indianapolis, for Appellant–Plaintiff.

Tom A. Black, Plymouth, for Appellee–Defendant.

## OPINION

BARTEAU, Judge.

■ The State appeals the grant of Frederick Drubert Junior's motion to dismiss the charge against him of operating a motor vehicle after having been adjudged an habitual traffic violator, a Class D felony. The State raises a single issue, which we restate as whether a moped[1] is a "motor vehicle" which an habitual traffic violator is prohibited from operating, when a driver's license is not required for its operation.

We affirm.

### FACTS

In the early morning hours of July 12, 1996, Drubert was riding his moped in Plymouth, Indiana. He was stopped by a Plymouth police officer because the tail light of the moped was not working. About five years prior to the stop, Drubert had been declared an habitual traffic violator (HTV). Drubert knew his driving privileges had been suspended. He was charged with operating a motor vehicle after having been adjudged an habitual traffic violator. Drubert moved to dismiss the charge on the ground his moped was not a "motor vehicle," and the trial court granted his motion.

### DISCUSSION

Drubert was charged with violating Indiana Code section 9–30–10–16, which prohibits operation of a "motor vehicle" while the operator's driving privileges are suspended as an habitual traffic violator. At the time of Drubert's arrest, "motor vehicle" was defined, in pertinent part, as "a vehicle that is self-propelled." Ind.Code § 9–13–2–105(a).[2] "Motorized bicycle" is defined in pertinent part in a separate code section as a two- or three-wheeled vehicle that is propelled by an internal combustion engine or an electric motor, and which, if powered by an internal combustion engine, has a maximum design speed of not more than 25 miles per hour on a flat surface. Ind.Code § 9–13–2–109. For the purposes of Indiana Code title 9, article 21 (traffic regulations) in particular, "motor vehicle" is defined as "a vehicle *except a motorized bicycle* that is self-propelled." Ind.Code § 9–13–2–105(b) (emphasis supplied).

A driver's license is not required for the operation of a moped. A moped operator must be at least 15 years old, and have either an operator's license, a chauffeur's license, a public passenger chauffeur's license, or an identification card[3] issued under Indiana Code section 9–24. Ind.Code § 9–21–11–12. The Bureau of Motor Vehicles (BMV) is obliged to issue such an identification card to any Indiana resident who applies for one. Ind.Code § 9–24–16–1. The cards are used for identification purposes by people without driver's licenses. *See* Ind.Code § 9–24–16–11.6 (identification card issued under this chapter may not be used to identify the person holding the card as the operator of a motor vehicle) and Ind.Code § 9–24–16–11.4 (entities which accept a driver's license as identification are obliged to accept an identification card issued under this chapter for identification).

We acknowledge at the outset that in *Hendrickson v. State,* 660 N.E.2d 1068, 1071 (Ind.Ct.App.1996), *trans. denied,* a panel of this court recently stated that it "could not agree with [appellant's] contention that the legislature intended to allow someone with an identification card to drive a moped even when a person has been convicted of being an habitual traffic offender and his driving privileges have been suspended for life." We are not bound by that broad statement in *Hendrickson* for two reasons.

---

1. The trial judge assumed, and the parties did not dispute at trial, that Drubert's moped is a "motorized bicycle" as defined in Indiana Code section 9–13–2–109. The applicable statutes do not define "moped."

2. The legislature added a provision to section 105, effective July 1, 1997, about a year after Drubert's arrest, which explicitly exempted motorized bicycles from the definition of "motor vehicle" for purposes of the habitual traffic violator statutes in chapter 9–30–10. Ind.Code § 9–13–2–105(d).

3. Drubert had a state-issued identification card, and he was over 15 years old, when he was stopped. However, the identification card had expired.

■ First, the pertinent issue in *Hendrickson* was whether there was a sufficient factual basis for Hendrickson's plea of guilty to a charge of operating a motor vehicle while suspended as an habitual traffic violator. A factual basis for a guilty plea exists when there is evidence about the elements of the crime from which a court could reasonably conclude that the defendant is guilty. *State v. Drysdale,* 677 N.E.2d 593, 596 (Ind. Ct.App.1997), *trans. denied.* Relatively minimal evidence has been held adequate. *Id.* And, as *Drysdale* suggests, there may be a sufficient factual basis for a guilty plea even though the evidence would not have supported a conviction after a trial.

In *Drysdale,* we addressed the effect of a defective habitual offender suspension notice in the context of a guilty plea. A notice that a driver's license is suspended because the driver is an habitual offender must include an advisement that the driver may seek judicial review of the suspension. Ind.Code § 9–30–10–5. If the State cannot prove that such an advisement was provided, a *conviction* for operating a motor vehicle while driving privileges are suspended cannot be sustained. *Griffin v. State,* 654 N.E.2d 911, 912 (Ind.Ct. App.1995).

The State had notified Drysdale that he was suspended as an habitual traffic offender, but failed to notify him of his right to judicial review of his suspension. Because the notice of his suspension was defective, Drysdale argued, there could not be an adequate factual basis for his plea of guilty to a charge of operating a motor vehicle after having been adjudged an habitual traffic offender. But we found that by pleading guilty, Drysdale had relieved the State of its burden to comply strictly with the statutory notice requirements. 677 N.E.2d at 595. In the context of the guilty plea, we decided that the State was not required to prove the specific contents of its suspension letter. *Id.* at 596.

Similarly, in *Hendrickson,* we found a sufficient factual basis for a guilty plea to a charge of operating a motor vehicle while suspended as an habitual traffic violator, in part because Hendrickson had admitted to the trial court and the post-conviction court that the moped he was operating was a "motor vehicle." 660 N.E.2d at 1071. However, it does not necessarily follow from the adequacy of the *Hendrickson* guilty plea that operation of a moped would provide a sufficient evidentiary basis for a conviction, after a trial, for operating a "motor vehicle." Stated differently, we cannot allow Mr. Hendrickson's admissions to determine the definition of "motor vehicle" so as to bind other defendants.

Second, Hendrickson was originally charged with two offenses: operating a vehicle while intoxicated,[4] and operating while suspended as an habitual traffic violator. Pursuant to a plea agreement, the charge of operating while intoxicated was dropped in exchange for his guilty plea to the second charge. Still, our result in *Hendrickson* was obviously driven by the fact Hendrickson was intoxicated when he was stopped:

> Although an *intoxicated* moped driver may not have the same offensive striking power as does an intoxicated driver of a standard motor vehicle, the *intoxicated* moped driver is still a serious danger to the public. We cannot conclude that the legislature intended to allow people who are convicted habitual traffic offenders to drive a moped *while intoxicated,* thereby endangering the lives and property of others.

*Id.* at 1071–72 (emphasis supplied).

Because driving a moped while intoxicated might violate Indiana Code Section 9–30–5–1, 2, or 3 even if a moped is not a *"motor* vehicle," and because our decision in *Hendrickson* focused on whether a guilty plea was supported by an adequate factual basis, we do not believe *Hendrickson* stands for the proposition that a moped or motorized bicycle is necessarily a "motor vehicle" in every context.[5]

---

4. We note that this charge only requires proof of operation of a "vehicle," and not operation of a *"motor* vehicle." Ind Code § 9–30–5–1 through 3.

5. Indeed, our decisions have suggested that whether a motorized bicycle or moped is a "motor vehicle" will depend on the factual or procedural context. *Compare, e.g., Chapman v. State,* 650 N.E.2d 764, 766 (Ind.Ct.App.1995) (stating

Specifically, we do not believe the legislature intended that the use of a moped would violate the prohibition against the operation of a "motor vehicle" by a person whose driving privileges had been suspended as an habitual traffic violator. The legislative intent of an act, as ascertained from the act as a whole, prevails over the strict literal meaning of any word or term used within the act. *Combs v. Cook,* 238 Ind. 392, 397, 151 N.E.2d 144, 147 (1958). A penal statute is to be strictly construed against the State, and any ambiguity must be resolved against imposing the penalty. Only those cases which are clearly within the meaning of, and legislative intent underlying, a statute can be brought within the statute. *Ajabu v. State,* 677 N.E.2d 1035, 1041 (Ind.Ct.App.1997), *trans. denied.*

It is apparent from a review of the Habitual Offender Act as a whole that the prohibitions against driving while suspended as an habitual violator are intended to apply to drivers of motor vehicles the operation of which requires a license.[6]

The result of a determination that a person is an habitual traffic violator is that the BMV must suspend the person's driving privileges. Ind.Code § 9–30–10–5. If, upon judicial review, a person is determined not to be an habitual violator, that person's remedy is the reinstatement of his or her driving privileges. Ind.Code § 9–30–10–8. The purpose of the Act is to classify those who, in the interest of public safety and health, should be prohibited from using the highways. *State ex rel. Van Natta v. Rising,* 262 Ind. 33, 36, 310 N.E.2d 873, 874–75 (1974). Because the result of that classification is a loss of driving privileges, the class of persons to which the Act applies must necessarily be limited to persons engaged in activities for which "driving privileges" are required. When construing a statute, we presume that the legislature intends its enactments to be applied in a logical manner, consistent with the underlying policies and goals of the statute. *In re Middlefork Watershed Conservancy District,* 508 N.E.2d 574, 577 (Ind.Ct.App.1987). We do not believe the legislature could have intended, under the statute prohibiting operation of a motor vehicle while a person's driving privileges are suspended, to criminalize an activity like Drubert's, for which "driving privileges" are not required.

### CONCLUSION

The trial court properly dismissed the charge against Drubert of operating a motor vehicle while his driving privileges were suspended, and its judgment is affirmed.

SHARPNACK, C.J., and BAKER, J., concur.

---

that a moped "can be construed" to be a "motor vehicle" for purposes of the vehicle theft statute) *with Terre Haute First Nat'l Bank v. Stewart,* 455 N.E.2d 362, 367 (Ind.Ct.App.1983) (stating that "a motorized bicycle is not included in the definition of a motor vehicle, however, it is a vehicle" in deciding that an adult standard of care would apply to a 13 year old moped driver in a tort action).

6. We note again that our decision in *Hendrickson* would suggest that an operator of any type of "vehicle" might be subject to prosecution under the Act if intoxicated.