**Larry Ray BOYLES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 84A05–0305–PC–255.

Court of Appeals of Indiana.

Dec. 18, 2003.

Rehearing Denied March 5, 2004.

Robert F. Hellmann, Terre Haute, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

MATHIAS, Judge.

Larry Ray Boyles ("Boyles") pled guilty to Class D felony operating a motor vehicle while privileges are suspended[1] in Vigo Superior Court, but later challenged that conviction in a petition for post-conviction relief. His petition was denied. Boyles appeals and raises the following issue: whether operation of a motor vehicle on

private property is conduct proscribed by Indiana Code section 9–30–10–16.

We affirm.

**Facts and Procedural History**

Prior to the operative facts in this case, Boyles' driving privileges had been suspended because he was found to be an habitual traffic violator. On December 3, 1995, Boyles operated a dirt bike along a railroad right-of-way and along the edge of Snow Hill Road, an old coal haulage road for Snow Hill Mine. Appellant's App. p. 4. As a result of this conduct, Boyles was charged with and pled guilty to Class D felony operating a motor vehicle while privileges are suspended.

On August 14, 2002, Boyles filed a petition for post-conviction relief challenging his conviction and arguing that operation of a dirt bike on private property is not conduct proscribed by Indiana Code section 9–30–10–16. The trial court denied his petition finding that the State was not required to prove that Boyles was operating a motor vehicle on a public highway. The trial court stated, "[i]f, as the Defendant admitted, he could not operate his dirt bike on the public way without a valid driver's license, he could not do so on private property." Appellant's App. p. 41. Boyles now appeals.

**Standard of Review**

■ "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Saylor v. State*, 765 N.E.2d 535, 547 (Ind.2002). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* We will not reverse the post-conviction court's judgment unless the evidence as a whole unerringly and unmistak-

1. Ind.Code § 9–30–10–16 (1992 & Supp. 2003).

ably leads to a conclusion opposite that reached by the post-conviction court. *Id.*

## Discussion and Decision

■ Boyles argues that section 9–30–10–16 does not criminalize activities for which driving privileges are not required; therefore, an individual who operates a motor vehicle on private property does not engage in conduct proscribed by that statute.[2] In support of this argument Boyles relies on *State v. Drubert,* 686 N.E.2d 918 (Ind.Ct.App.1997). In that case, Drubert, an habitual traffic violator whose driving privileges had been suspended, was operating a moped. *Id.* at 919. He was stopped by a police officer because his taillight was not working. *Id.* Drubert was charged with operating a motor vehicle after having been adjudged an habitual traffic violator. *Id.* He filed a motion to dismiss the charge arguing that a moped was not a "motor vehicle." His motion was granted and the State appealed. *Id.*

On appeal, our court observed that a driver's license is not required for the operation of a moped and under title 9, article 21, a "motor vehicle" is "defined as 'a vehicle *except a motorized bicycle* that is self-propelled.'"[3] *Id.* (citing Ind.Code §§ 9–21–11–12; 9–13–2–105(b)) (emphasis in original). We also noted that the purpose of the Habitual Offender Act "is to classify those who, in the interest of public safety and health, should be prohibited from using the highways." *Id.* at 921. Further, we stated that because an habitual traffic violator loses his driving privileges, "the class of persons to which the Act applies must necessarily be limited to persons engaged in activities for which

'driving privileges' are required." *Id.* Therefore, we concluded:

> It is apparent from a review of the Habitual Offender Act as a whole that the prohibitions against driving while suspended as an habitual violator are intended to apply to drivers of motor vehicles the operation of which requires a license.... We do not believe the legislature could have intended, under the statute prohibiting operation of a motor vehicle while a person's driving privileges are suspended, to criminalize an activity like Drubert's, for which "driving privileges" are not required.

*Id.*

> Indiana Code section 9–24–1–1 provides:
>
> Except as provided in section 6 or 7 of this chapter, an individual must have a valid Indiana:
>
> (1) operator's license;
>
> (2) chauffeur's license;
>
> (3) public passenger chauffeur's license;
>
> (4) learner's permit;
>
> (5) commercial driver's license; or
>
> (6) motorcycle operator's license or endorsement;
>
> issued to the individual by the bureau under this article *to drive upon an Indiana highway* the type of motor vehicle for which the license or permit was issued.

Ind.Code § 9–24–1–1 (1992) (emphasis added). Relying on our court's analysis in *Drubert,* Boyles argues that operating his dirt bike on *private property* does not require a license under section 9–24–1–1.

**2.** We note that during the post-conviction proceedings, Boyles did not argue that the dirt bike was not a "motor vehicle" as that term is used in section 9–30–10–16.

**3.** In 1997, the General Assembly amended section 105 and explicitly exempted motorized bicycles from the definition of "motor vehicle" for purposes of the habitual traffic violator statutes in chapter 9–30–10. *See* Ind. Code § 9–13–2–105(d) (1992 & Supp.2003).

*See* Br. of Appellant at 7 ("Once he was upon private land, not a public highway, no license was required for the operation of a motorcycle.").

In response, the State contends that "Indiana Code section 9–30–10–16 does not require proof that the operation occurred on public roads but applies equally to the operation of vehicles on private property." Br. of Appellee at 2. In support of this argument, the State relies on *Guidry v. State,* 650 N.E.2d 63 (Ind.Ct.App.1995).

Indiana Code section 9–30–10–16 provides in pertinent part:

> a person who operates a motor vehicle . . . while the person's driving privileges are validly suspended under this chapter or IC 9–12–2 (repealed July 1, 1991) and the person knows that the person's driving privileges are suspended . . . commits a Class D felony.

Ind.Code § 9–30–10–16 (1992 & Supp. 2003). In *Guidry,* our court addressed the issue of whether section 9–30–10–16 requires proof that the defendant was operating his motor vehicle on a public roadway. 650 N.E.2d at 65.

In that case, Guidry, an habitual traffic violator, was seen driving a vehicle through a private apartment complex, and was subsequently convicted of operating a vehicle while suspended. *Id.* On appeal, he argued that section 9–30–10–16 "cannot be read to prohibit the operation of a vehicle on private property." *Id.* at 66. Observing that "there is no language re-quiring proof of operation of a motor vehicle upon a public highway," we concluded:

> The language of [Indiana Code section] 9–30–10–16 is not vague. It states unequivocally that a person who operates a motor vehicle while his driving privileges are suspended commits a class D felony. An individual reading the statute would understand it to proscribe operation of a vehicle on [a] private roadway used by the general public.

*Id.* at 66–67. Finally, we stated, "[t]he absence of limiting language in [Indiana Code section] 9–30–10–16 reveals the legislature's recognition that the danger to the public is equally as great on private property used by the public, such as shopping center parking lots and apartment complex roads, as it is on public highways."[4]  *Id.* at 66.

We agree with our court's conclusion in *Guidry* that pursuant to the plain, unambiguous language of section 9–30–10–16, the State is not required to prove that the defendant operated his motor vehicle on a public highway. *See Melo v. State,* 744 N.E.2d 1035, 1037 (Ind.Ct.App.2001) ("We do not interpret a facially clear and unambiguous statute. Instead, we give the statute its plain and clear meaning and will not resort to other rules of statutory construction."). Consequently, the State is only required to establish that 1) the defendant 2) operated 3) a motor vehicle 4) while his driving privileges were suspended. *Guidry,* 650 N.E.2d at 67; Ind.Code § 9–30–10–16.

---

4. In a footnote, we also noted that Indiana Code section 9–4–13–13, the predecessor statute to section 9–30–10–16 provided: "It shall be unlawful for any person who has been adjudged an habitual traffic offender under the provisions of this chapter . . . to operate any motor vehicle, which is required to be registered, on public thoroughfares or on private property which is commonly used by the motoring public in this state while the order of the court prohibiting such operation remains in effect." *Id.* at 66 n. 3; *Green v. State,* 403 N.E.2d 897, 898 n. 1 (Ind.Ct.App. 1980). Therefore, under that statute, which was repealed in 1978, "the State was required to show that the accused operated his vehicle on either the public highways or commonly used private property." *Guidry,* 650 N.E.2d at 66 n. 3 (citing *Green,* 403 N.E.2d at 901).

In this case, it is undisputed that Boyles, whose driving privileges were suspended, operated a dirt bike along a railroad right-of-way and along the edge of Snow Hill Road, an old coal haulage road for Snow Hill Mine. These admissions constitute a sufficient factual basis to support Boyles' guilty plea and the post-conviction court properly denied Boyles' petition for post-conviction relief.

Affirmed.

NAJAM, J., and ROBB, J., concur.