Donald L. **PRUITT**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 55A01–0912–CR–597.

Court of Appeals of Indiana.

Oct. 4, 2010.

Transfer Denied Dec. 10, 2010.

*Sundling v. State,* 679 N.E.2d 988, 995 (Ind. Ct.App.1997), *reh'g denied.*

Gregory T. Lauer, Martinsville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Brian Reitz, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SULLIVAN, Senior Judge.

This interlocutory appeal was certified to this court by the trial court and we accepted jurisdiction. Donald L. Pruitt (Pruitt) was charged with Operating a Motor Vehicle after his driving privileges had been forfeited for life, a Class C felony.[1]

In this appeal Pruitt challenges the denial of his pre-trial Motion to Suppress.

The offense charged emanated from a traffic stop conducted in a private parking lot in the city of Martinsville. The officer making the charge had been on routine patrol in his marked police vehicle sometime after midnight when he saw Pruitt's vehicle being operated without its headlights in a parking lot of the "Square One Pub." Appellant's App. p. 7. The officer activated his police car lights and after determining that Pruitt's driving privileges had been suspended placed him under arrest.

Pruitt asserts that the officer's traffic stop was invalid and that the evidence resulting from the stop must be suppressed. The standard of appellate review of a trial court's ruling on a motion to suppress is similar to other sufficiency issues. *Shotts v. State*, 925 N.E.2d 719, 722 (Ind.2010). We determine whether substantial evidence of probative value exists to support the trial court's ruling. *Id.*

Pruitt contends that the stop was invalid because it took place upon a private business parking lot. In his Motion to Suppress, Pruitt, citing to Indiana Code sections 9–21–18–1 to 9–21–18–15, took the position that enforcement of traffic regulations on private property could be done only if there was a contract between the city and the owner or proprietor of the private business for such traffic regulation, and that there was no such contract here.[2]

---

1. Ind.Code § 9–30–10–17 (West 2004).

2. The State argues that the stop was valid because the officer had a reasonable suspicion that Pruitt was operating a vehicle while intoxicated. Specifically, the State notes: (1) Pruitt was driving without headlights on; and (2) Pruitt was in an area where the officer had previously made several arrests for driving while intoxicated. We disagree with the State's argument. Presence in a high-crime area, standing alone, cannot justify an investigatory stop. *See Williams v. State*, 477 N.E.2d 96, 99 (Ind.1985) (determining that the characteristics of the neighborhood in which the police detained the appellant did not provide reasonable suspicion for the detention).

We further note that when the officer was asked at the suppression hearing whether he stopped Pruitt to investigate a headlight viola-

We disagree with Pruitt's reasoning. Indiana Code sections 9–21–18–1 to 9–21–18–15 govern contractual arrangements between local governmental units and private business property or shopping centers. Pursuant to those contractual arrangements, local governmental units may enforce traffic ordinances on private properties. Specifically, Indiana Code section 9–21–18–4 provides, "A unit and the owner or lessee of a shopping center or private business property located within the unit *may* contract to empower the unit to regulate by ordinance the parking of vehicles and the traffic at the shopping center or private business property, subject to approval by the fiscal body of the unit by ordinance." (emphasis added). We do not read this statute or any other provision of Indiana Code sections 9–21–18–1 to 9–21–18–15 to bar law enforcement officers from investigating violations on private property such as shopping centers in the absence of a contractual agreement with each and every such property.

Furthermore, in its order denying the Motion to Suppress, the trial court relied upon *Boyles v. State,* 800 N.E.2d 616 (Ind. Ct.App.2003). The *Boyles* case, in turn, relied upon *Guidry v. State,* 650 N.E.2d 63 (Ind.Ct.App.1995). In *Guidry,* the appellant, Guidry, had been adjudged a habitual traffic offender and his license was suspended for ten years. *Id.* at 65. Subsequently, an officer who lived in an apartment complex was approached by a neighbor, Guidry's wife, who stated that Guidry had struck her. *Id.* Guidry's wife pointed out Guidry to the officer as Guidry was driving in the apartment complex. *Id.* The officer followed Guidry, ran a license plate check on his vehicle, and discovered that his license was suspended.

*Id.* Guidry sought review of his conviction for operating a vehicle with a suspended license and argued, among other claims, that the statute governing that offense, Indiana Code section 9–30–10–16, does not apply to operation of a vehicle on private property such as the apartment complex. *Id.* at 66. This Court noted that the statute was not explicitly limited in application to public highways. *Id.* Furthermore, we noted, "Statutes providing for forfeiture of driving privileges or punishment for habitual violations of the traffic statutes are designed to protect the public from persons who have demonstrated that they are unable to obey traffic laws established for the safety of citizens and that their driving presents a hazard to life and property." *Id.* Therefore, the absence of limiting language in the statute "reveals the legislature's recognition that the danger to the public is equally as great on private property used by the public, such as shopping center parking lots and apartment complex roads, as it is on public highways." *Id.* We concluded that the conviction remained valid although the crime occurred on private property. *Id.*

In this case, the statute at issue, Indiana Code section 9–30–10–17, like Indiana Code section 9–30–10–16 in *Guidry,* is not explicitly limited in application to persons who operate a motor vehicle on public roads. Furthermore, as was the case in *Guidry,* we note that the legislature's choice not to use such limiting language indicates that the danger to the public from a habitual traffic offender driving without a license is as great in shopping center and other private parking lots as it is on public highways. The lack of limiting language in Indiana Code section 9–30–10–17 further supports our conclusion that

---

tion or for "OWI", the officer testified, "The reason for the stop was because of the head-

light being out, . . . ." Tr. p. 11.

Indiana Code sections 9–21–18–1 to 9–21–18–15 do not bar law enforcement officers from investigating violations in private parking lots in the absence of a contractual agreement with the property owner.

Pruitt also argues that the officer was mistaken in his belief that failure to turn on vehicle headlights after dark while driving on private property is a traffic violation. In his brief, Pruitt maintains that Indiana Code section 9–21–7–2 specifies that the requirement for operation of headlights between sunset and sunrise is only applicable to vehicles upon "an Indiana highway," and that the requirement is not applicable to a private parking lot.

An officer's mistaken belief about what constitutes a violation does not amount to good faith sufficient to justify an investigatory stop. *See State v. Massey*, 887 N.E.2d 151, 156 (Ind.Ct.App. 2008), *trans. denied* (quoting *State v. Rager*, 883 N.E.2d 136, 139–140 (Ind.Ct.App. 2008)).

In *Datzek v. State*, 838 N.E.2d 1149, 1152–1153 (Ind.Ct.App.2005), an officer at a gas station saw the appellant, Datzek, who may have been intoxicated, come inside the gas station store, purchase items, and leave. Next, the officer saw Datzek get into a car and drive out of the parking lot without using a turn signal. *Id.* at 1153. The officer stopped Datzek, issued a ticket for violating a statute governing the use of turn signals, and arrested him for operating a vehicle while intoxicated. *Id.* On appeal, Datzek argued that the officer was mistaken in believing that he had violated the statute, and that the officer's mistaken belief did not give rise to reasonable suspicion for an investigatory stop. *Id.* at 1154. This Court concluded that Datzek's turn onto the highway from the parking lot was not excluded by the language of the governing statute, and that

application of the statute as argued by Datzek "would run counter to the terms of the statute and the policy to facilitate safe automobile traffic." *Id.* at 1155. Consequently, the officer did not have a mistaken belief as to a violation of law and properly detained Datzek. *Id.* at 1156.

In this case, we note that although Indiana Code section 9–21–7–2 is limited in application to vehicles on Indiana highways, the statute does not necessarily imply that a driver is allowed at all times and under all circumstances to drive without headlights on private property. Such a reading of the statute would run counter to the policy of facilitating safe automobile traffic. Furthermore, the statute neither states nor implies that an officer is barred from stopping a driver for driving without headlights on private property. Under these circumstances, as in *Datzek*, we cannot conclude that the officer was mistaken in believing that Pruitt had committed a traffic violation by driving without headlights. Therefore, the officer had reasonable suspicion to stop Pruitt for driving without headlights, which led to the officer's discovery that Pruitt was driving even though his license was suspended for life.

For these reasons, we conclude that there is sufficient evidence of probative value to support the trial court's ruling. We affirm the trial court's denial of Pruitt's Motion to Suppress.

DARDEN, J., and CRONE, J., concur.