## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 25 2019, 6:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald J. Berger
Law Office of Donald J. Berger
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bill Brian Tomlinson, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | September 25, 2019 <br><br> Court of Appeals Case No. 19A-CR-2 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable John M. Marnocha, Judge <br><br> Trial Court Cause No. 71D02-1804-F6-334 |

**Brown, Judge.**

[1]     Bill Brian Tomlinson appeals his conviction for operating a motor vehicle while privileges were suspended as a level 6 felony. He raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

*Facts and Procedural History*

[2]     On April 12, 2018, Indiana State Trooper Mark Price went to a gas station and as soon as he began to obtain fuel, Tomlinson stopped pumping gas, entered a minivan, pulled into a parking spot, and exited his vehicle. Trooper Price looked at the license plate at the back of the minivan and noticed that it was "fuzzy, blurry, maybe altered a little bit." Transcript at 10. He drove by the minivan, obtained the license plate information, and drove directly across the street into a parking lot. Dispatch informed him that the plate belonged to a 2002 beige tan Chevy Impala and that it had expired in 2017. He determined that the plate did not belong to the minivan and that it had been altered by attempting to "turn a 7 into a 9." *Id.* at 11.

[3]     Tomlinson entered the minivan and drove north on Ameritech Drive, and Trooper Price turned on his headlights "to go after the vehicle and make a traffic stop." *Id.* at 13. As he accelerated forward, Tomlinson braked and turned into the parking lot where Trooper Price was positioned. Tomlinson pulled into a parking space in front of a store, and Trooper Price activated his emergency lights and pulled in behind Tomlinson at an angle.

Trooper Price asked Tomlinson if the license plate belonged to the vehicle and if he had registration for the vehicle, and Tomlinson stated that he had recently purchased it from a friend but indicated he did not have a bill of sale or title. When asked if he had his driver's license, Tomlinson handed Trooper Price an Indiana identification card. Trooper Price returned to his vehicle, ran the information, and determined that Tomlinson was an habitual traffic violator. He approached Tomlinson's vehicle, and Tomlinson locked the door. After some discussion, Tomlinson eventually exited the vehicle.

On April 16, 2018, the State charged Tomlinson with operating a vehicle while suspended as an habitual traffic violator as a level 6 felony. On November 29, 2018, the court held a jury trial. Trooper Price testified that Tomlinson's minivan "was coming on to Ameritech Drive," "went north," and "was actually heading north on Ameritech Drive." *Id.* at 14. He also stated that "[t]he van, the vehicle in question [was] now heading north on American Drive." *Id.* at 23. During direct examination of Trooper Price, the following exchange occurred:

> Q. Ameritech Drive, is that a roadway?
>
> A. Yes. [It's] a roadway. It connects with Cleveland and Brick Road which is a pretty big intersection before you get to the bypass. I mean, there's traffic lights on that side. If you go down farther north, there's some stop signs, two-way road.

*Id.* at 20.

During redirect examination of Trooper Price, the following exchange occurred:

> Q. Officer, the area in between the gas station and the parking lot where you eventually made the traffic stop, that's Ameritech Drive, correct?
>
> A. Yes.
>
> Q. And you observed [Tomlinson] drive on that road?
>
> A. Yes.
>
> Q. And that is a public roadway?
>
> A. Yes.
>
> Q. And there's also public roadways leading to the gas station, correct?
>
> A. That's correct.

*Id.* at 33-34. On recross-examination, the following exchange occurred:

> Q. And who maintains Ameritech Drive.
>
> A. I don't who [sic] maintains it. I mean, it crosses the intersection – it has a main intersection there, probably a county highway I would assume or the City of South Bend.
>
> Q. Or do you know if Ameritech – that there's a big Ameritech plant over there or something like that, isn't there too?
>
> A. The Ameritech plant is on the south side. The north side goes all the way up into Michigan.
>
> Q. Okay. So Ameritech at that point, do you if [sic] Ameritech or whoever is inside the Ameritech plant is the one who actually maintains the roadway at least up until Cleveland?

A.  I don't know who operates the roadway.

*Id.* at 34-35.

[7]     The State introduced and the court admitted a recording of the encounter as well as a certified copy of Tomlinson's driving record, which indicated that his status was habitual traffic violator, he had an address on Holmes Road, his suspension was effective March 29, 2011, and expires on March 26, 2021, and that notice was mailed to his address on February 22, 2011.  Trooper Price testified that Tomlinson's Holmes Road address was also the address on the identification card.  The court admitted a certified copy of the charging information in cause number 71D02-1301-FC-4 ("Cause No. 4"), which alleged that Tomlinson operated a motor vehicle on January 9, 2013, "after having his Indiana driving privileges validly suspended as a Habitual Violator of Traffic Laws by the Indiana Bureau of Motor Vehicles with a begin date of the 29th [of] March, 2011, and an end date of the 26th day of March, 2021," and that he "operated a motor vehicle when he knew or reasonably should have known that he was suspended as a Habitual Traffic Violator."  State's Exhibit 4.  The court also admitted a certified judgment of conviction and sentencing order dated August 21, 2013, for Cause No. 4 which indicated that Tomlinson pled guilty to "Count I, HTV, Class D Felony."  *Id.*

[8]     After the State rested, Tomlinson's counsel moved for a directed verdict and stated that "[t]he only evidence that we have of Ameritech Drive being a highway or street and publicly maintained is – well, really there is none because

the officer testified he didn't know who actually maintained it." Transcript at 36. The court noted *Guidry v. State*, 650 N.E.2d 63 (Ind. Ct. App. 1995), denied the motion, and stated "I'm not entitled to weigh evidence or judge credibility but I do find there is evidence on every element of the offense. What the jury does with it is their job." Transcript at 39.

[9] Tomlinson testified that he did not have a valid driver's license but was unaware at the time of the stop that he had been adjudged as an habitual traffic violator by the Bureau of Motor Vehicles. He testified that he obtained his identification card when he was released from prison two years prior to the stop, that the address on the identification card had "been on my record but I haven't lived at that address for 20 years," and that the Bureau of Motor Vehicles "used the address that was already on there." *Id.* at 43. He denied receiving a notice that he was suspended as an habitual violator. When asked about Cause No. 4, he indicated that he "thought that charge was getting thrown out." *Id.* at 47. On cross-examination, when asked, "[b]ut you drove the vehicle from the gas station across the street to the parking lot, correct," he answered: "I crossed the street, yes." *Id.* at 52-53.

[10] After the defense rested, Tomlinson's counsel asked the court if it would allow him to argue "lack of evidence that driving was upon a highway or a street," and the court stated: "Well, I don't think the law requires it. You can argue what the statute means. Of course, it's the jury to determine the law but it says what it says and I suppose the State can say it says what it says." *Id.* at 57. During closing argument, Tomlinson's counsel stated that an habitual traffic

violator can operate a vehicle in a parking lot, the prosecutor asked to approach and asserted: "The Court determines a habitual traffic violator may not operate a vehicle in a parking lot." *Id.* at 66. Defense counsel stated that he thought it was an issue that could go to the jury. The court stated: "I think in light of that, the [C]ourt of [A]ppeals decision, they pretty much determined that it is." *Id.* The court indicated that the two remedies were to "just leave it as it is and go on" or "continue down that line and then I'd probably have to modify my instructions including something from that case that says you can't operate in [a] parking lot." *Id.* Defense counsel stated: "I'll just leave it where it is." *Id.*

[11] The jury found Tomlinson guilty as charged. The court entered judgment of conviction and sentenced him to thirty months with all but 288 days suspended and placed him on probation for twelve months.

## *Discussion*

[12] The issue is whether the evidence is sufficient to sustain Tomlinson's conviction. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

[13] The offense of operating a motor vehicle while privileges are suspended as a level 6 felony is governed by Ind. Code § 9-30-10-16, which provides that "[a] person who operates a motor vehicle . . . while the person's driving privileges are validly suspended under this chapter or IC 9-12-2 (repealed July 1, 1991) and the person knows that the person's driving privileges are suspended . . . commits a Level 6 felony."

[14] On appeal, Tomlinson does not specifically argue that he was unaware of his status as an habitual offender. Rather, he argues that "[t]he facts seem to establish that [he] drove the vehicle but that driving was on private property not a public highway." Appellant's Brief at 8. He contends that the trial court took impermissible latitude in broadening the scope of the statute.[1] The State argues that Tomlinson did not operate the vehicle on only private property and that the language of Ind. Code § 9-30-10-16 is clear and was properly interpreted and applied by the trial court.

[15] To the extent Tomlinson argues that the evidence showed that he drove only on private property, we disagree based upon Trooper Price's testimony related to Ameritech Drive. Even assuming that the State did not present sufficient evidence that Ameritech Drive was a public roadway, we have previously held

---

[1] Tomlinson also asserts: "Limiting the Defense in this manner prohibited the jury from considering the issue of [him] driving on private property and thereby denied [him] of a constitutional right." Appellant's Brief at 8. He does not cite to authority or develop this argument, and accordingly, has waived the claim. *See Cooper v. State*, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding the defendant's contention was waived because it was not supported by cogent argument).

that such evidence is not required under the statute. *See Guidry v. State*, 650 N.E.2d 63, 67 (Ind. Ct. App. 1995) (holding that the language of Ind. Code § 9-30-10-16 is not vague, the statute "states unequivocally that a person who operates a motor vehicle while his driving privileges are suspended commits a class D felony," that "[a]n individual reading the statute would understand it to proscribe operation of a vehicle on [a] private roadway used by the general public," and that "[t]he State was not required to prove that [the defendant] operated his vehicle on a public highway"); *see also Pruitt v. State*, 934 N.E.2d 767, 769 (Ind. Ct. App. 2010) ("In this case, the statute at issue, Indiana Code section 9-30-10-17, like Indiana Code section 9-30-10-16 in *Guidry*, is not explicitly limited in application to persons who operate a motor vehicle on public roads. Furthermore, as was the case in *Guidry*, we note that the legislature's choice not to use such limiting language indicates that the danger to the public from a habitual traffic offender driving without a license is as great in [a] shopping center and other private parking lots as it is on public highways."), *trans. denied*. Based upon the record, we cannot say that the inferences made by the jury were unreasonable. We conclude that evidence of probative value exists from which the jury could have found Tomlinson guilty beyond a reasonable doubt of operating a vehicle while privileges were suspended as a level 6 felony.

## *Conclusion*

[16]     For the foregoing reasons, we affirm Tomlinson's conviction.

[17]     Affirmed.

Altice, J., and Tavitas, J., concur.